**Nathan KISER, Appellant,**

v.

**LEMCO INDUSTRIES, INC., Appellee.**

**No. 8656.**

Court of Civil Appeals of Texas, Amarillo.

March 29, 1976.

Rehearing Denied March 29, 1976.

Suddereth, Woodley & Dudley, Ben D. Suddereth, Comanche, for appellant.

Warren G. Tabor, Jr., Levelland, for appellee.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

Our 8 March 1976 opinion is withdrawn and this opinion is substituted.

Summary judgment was rendered in favor of Lemco Industries, Inc., for the $20,-000 difference between the cost of substitute grain and the contract price of the grain Nathan Kiser agreed to, but did not deliver to Lemco. The record fails to demonstrate that no fact issue stands in the way of judgment for Lemco. Reversed and remanded.

Lemco pleaded that a written contract whereby it agreed to buy, and Kiser agreed to sell, one million pounds of grain at $2.50 per hundredweight for delivery from October through December, 1973, was executed in the following form:

# LEMCO IND., INC.
P. O. Box 1367          Phone 894-6109
West Avenue and Lubbock Highway
LEVELLAND, TEXAS

27

DATE   May 12 1973

This contract is to confirm the purchase from Nathan Kiser

_____ to the account of __Lemco Industries Inc.__

Per___Nathan Kiser & L. E. Mitchell Jr.

Quanity__:1,000,000

Commodity___# 2 YEG

Price__2.50_____ Per____cwt_____ FOB__Levelland, Texas

Time of Delivery__October November December 1973

Terms___Payment on Delivery

Bank__Levelland State Bank

Weight____Receiving_____Grades___# 2 YEG

Remarks___Dock starts at 2 % per point on moisture above 14%

The Buyer or Seller has the right to purchase enough grain at
current prices to fill any shortage of contract and charge the
difference to the seller. Time limit stated in contract shall
apply.

Buyer                          Seller

that Kiser failed and refused to deliver any grain; that to fill the shortage, Lemco was forced to purchase 1,000,000 pounds of grain on the open market at $4.50 per hundred pounds; and that Lemco suffered damage in the sum of $20,000. After Kiser's plea of privilege was denied, *Kiser v. Lemco Industries, Inc.*, 521 S.W.2d 142 (Tex.Civ.App.—Amarillo 1975, no writ), Kiser answered and denied liability.

Lemco moved for summary judgment. The motion was supported with the written agreement, the record on the hearing on the plea of privilege, and the affidavit of L. E. Mitchell, Jr., Lemco's vice-president who

had signed the written agreement with Kiser. Mitchell's affidavit details the circumstances surrounding the execution of the written agreement with Kiser, the re-sale Lemco made of the grain to Bunge, Inc., and concludes:

In late October or early November, being the latter part of the 1973 harvest season for grain, the defendant had come by my office in Levelland, Texas, and had asked to see me. I was out of the office at the time, and did not see the defendant on this occasion.

About the middle of the month of November, 1973, practically all of the grain grown in the area had been harvested. The defendant had not delivered his grain to the elevator of Lemco Industries, Inc., as contracted. At this time, I made a trip to Cochran County for the purpose of locating the defendant's farm. I located the farm belonging to the defendant and at this time I discovered that all of the grain had been harvested. Upon my return to my office, I attempted to call the defendant by telephone. I did not contact the defendant by telephone at this time, and in the ensuing two or three weeks, I made numerous calls to the defendant's residence in Comanche, Texas. On each occasion, I was told by the party answering the phone that the defendant was not at home. I was unable to contact the defendant by phone at any time. I made numerous efforts to contact the defendant by telephone through the month of December, 1973.

The defendant, Nathan Kiser, did not deliver the one million pounds of grain as provided by his written agreement. In January of 1974, I was required to have the defendant's one million pounds of grain in my possession, to cover the contract that I had made for the sale of the grain. Under the terms of the sale made to Bunge Inc., this company could call for the grain from and after January 1, 1974 until March 1, 1974. Therefore, it was necessary that I have the one million pounds of grain in my possession to cover this transaction. Therefore, since the defendant did not deliver the one million

pounds of grain as contracted, it was necessary that I use company-owned grain to cover the sale to Bunge Inc. As a result of this, Lemco Industries, Inc. had to purchase this grain at a cost of $4.50 per one hundred pounds. The failure of the defendant to perform under his agreement to deliver one million pounds of grain has caused Lemco Industries, Inc. to suffer damages in the sum of $20,000.00.

Kiser responded with amended pleadings, objections to the motion for summary judgment, and his affidavit in opposition to the motion, the material part of which states:

. . . In the late part of October or early part of November, 1973, . . . I did go to the office of L. E. Mitchell, Jr. . . . and ask to see L. E. Mitchell, Jr. L. E. Mitchell, Jr., was not in his office at that time and was unavailable for me to talk with, according to the personnel at his office. I therefore informed the personnel of the office with whom I talked that I did not intend to, and would not, deliver one million pounds of grain to Lemco Industries, Inc., or deliver the grain harvested by me for the year 1973 to Lemco Industries, Inc.

Without ruling on Kiser's objections to the motion for summary judgment, the trial court, after hearing the motion and reciting a finding of the absence of genuine issue of any material fact, rendered summary judgment for Lemco in the sum of $20,000. Kiser has appealed, contending that Lemco's proof did not, as mandated by *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.Sup.1970), establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of its cause of action.

Indisputably, it is established that Kiser breached the agreement upon which Lemco relies. Kiser's repudiation of the whole contract in clear and unconditional language before the time for his full performance was an anticipatory breach. *Western Oil Sales Corporation v. Bliss & Wetherbee,* 299 S.W. 637, 638 (Tex.Com.

App., 1927). And, disregarding the evidential conflict in the affidavits and accepting as true, as we must, the evidence which supports Kiser's position in opposing the summary judgment motion, *Farley v. Prudential Insurance Company,* 480 S.W.2d 176, 178 (Tex.Sup.1972), Lemco knew of the breach not later than early November of 1973. At that time, Lemco had the option of tracking the remedy agreed to by the parties in the last paragraph of the written agreement, which was not made exclusive, or, because the contract of sale is one contemplated by Chapter 2 of V.T.C.A., Bus. & C.,[1] of pursuing any remedy available for the breach under the authority of § 2.610. Lemco contends that it elected to pursue its contractual remedy by purchasing substitute grain, which constituted "cover" within the purview of §§ 2.711–2.712.

The contractual remedy is the purchase of substitute grain "at current prices,"[2] within the "(t)ime limit stated in contract" with Kiser liable for any cost in excess of the contract price. The code remedy of "cover" is, as expressed in § 2.712(a), the "making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller." Good faith, as applicable to merchant Lemco, is defined by § 2.103(a)(2) as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." When any action is to be taken within a reasonable time, § 1.204(a) specifies that the parties may fix by agreement, as the parties here fixed, a time which is not manifestly unreasonable. Aside from affording recovery for other damages with credit for expenses saved in consequence of the breach which are not involved in this appeal, § 2.712(b), like the written agreement, measures Lemco's recovery from Kiser as the difference between the cost of cover and the contract price.

To summarily recover under the contract for the excess cost of grain purchased in view of Kiser's breach, Lemco was required to demonstrate that there is no fact issue as to cover under the contract. Thus, Lemco was required to establish as a matter of law a good faith purchase of substitute grain at market price not later than 31 December 1973.

Initially, we cannot say that Lemco discharged its burden to show as a matter of law cover at market price. We are cognizant that the code presumes that cover is proper and sets the market price with the burden on the seller to show otherwise, but the presumption arises when it is shown the buyer has complied with the requirements of § 2.712, *Laredo Hides Company, Inc. v. H & H Meat Products Company, Inc.,* 513 S.W.2d 210, 221 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.), and makes the purchase of substitute goods *on the market.* Spies, *Uniform Commercial Code: Article 2—Sales; Performance and Remedies,* 44 Tex.L.Rev. 629, 638, 642 (1966). Here, however, the proof is that Lemco did not purchase the substitute grain on the open market. Mitchell's sworn testimony is that "company-owned grain" was used in lieu of Kiser's, and that "this grain" was purchased at $4.50 per hundredweight. The burden was on Lemco to show that it complied with the contract the parties made, and this it has not done. See *Magnolia Provision Co. v. Coleman,* 3 S.W.2d 412, 414 (Tex.Com.App., 1928).

Neither can we say Lemco established with the legal certainty required that it covered within the time agreed upon by the parties. The only time limit stated in the agreement is "October November December 1973." Although Lemco argues that Mitchell's affidavit can have but the one interpretation that cover was perfected prior to January, 1974, the affidavit is not that definite. Mitchell does not state when the substitute grain was purchased; at most, he says Lemco was required to have

---

1. All cited sections are referenced to the sections of the Texas Business and Commerce Code (1968).

2. "(C)urrent prices" is synonymous with "market value." Words and Phrases, "Current Price."

**590**

Kiser's grain "(i)n January of 1974." Mitchell is an interested party and his testimony is not so clear, direct and positive as to establish cover prior to January of 1974, and thus, his testimony does nothing more than raise a fact issue as to the date of cover. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.Sup.1972).

■ Moreover, we hold that where the parties agree for cover to be effected "at current prices," the mere showing that the buyer purchased the substitute goods from himself at some price, without more, does not establish good faith. These circumstances invoke the general rule that what constitutes good faith under the circumstances of a particular case is a question of fact to be resolved by the fact finder. *Modular Technology Corporation, Metal Board Division v. City of Lubbock,* 529 S.W.2d 273, 276 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.). For this reason, if for no other, Lemco failed to establish cover as a matter of law under § 2.712 and independent of the written agreement.

■ This record illustrates circumstances where summary judgment is to be applied with caution and should not be granted where there is doubt as to the facts. *In re Price's Estate,* 375 S.W.2d 900, 904 (Tex. Sup.1964). Accordingly, the summary judgment proof failed to demonstrate that no fact issue stands in the way of judgment for Lemco. *Torres v. Western Casualty and Surety Company,* 457 S.W.2d 50, 52 (Tex. Sup.1970).

In its motion for rehearing, Lemco suggests that the liability portion of the judgment is severable and should be affirmed with any remand limited to the issue of damages as provided in Rule 434, Texas Rules of Civil Procedure. That rule was amended effective 1 January 1976 to provide that a separate trial on unliquidated damages alone shall not be ordered if liability issues are contested. Kiser's contest of liability precludes a partial remand.

The motion for rehearing is overruled. The summary judgment is reversed, and the cause is remanded.