Rick MUELLER, Appellant,

v.

Don McGILL, Don McGill, Inc., Don McGill Imports, Inc., and Greg Radford, Appellees.

No. 01–93–00168–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 3, 1994.

Rehearing Overruled Feb. 24, 1994.

Stan L. Pfeiffer, Bruce Feichtinger, Houston, for appellant.

Walter R. Grimes, John J. Brown, Houston, for appellees.

Before ANDELL, DUGGAN and HUTSON–DUNN, JJ.

## OPINION

ANDELL, Justice.

Appellant, Rick Mueller, brought an action for damages against appellees Don McGill, Don McGill, Inc., Don McGill Imports, Inc., and Greg Radford (collectively "McGill, Inc."), arising out of the breach an agreement for the purchase of a new automobile. The trial court directed a verdict in favor of McGill, Inc., and Mueller appeals. We reverse and remand.

In December 1985, Rick Mueller decided to buy his dream car, a black 1985 Porsche 911 Targa. He located such an automobile at McGill, Inc., and negotiated the terms of a sale for several hours with a salesman, Steve Richter. Richter and Mueller finally agreed upon a sales price and a trade-in allowance for Mueller's Mazda RX-7, and signed a written contract memorializing the agreement.

After the contract was signed, Richter suggested that Mueller talk to the finance manager about the possibility of financing the car through Chase Manhattan Bank. Although Mueller had already obtained financing for the vehicle, he agreed to talk to the finance manager because of the low interest rate offered by Chase Manhattan.

When Richter directed Mueller to the finance department, he informed him that the car would be ready to be picked up the next morning. After filling out the loan application in the finance department, Mueller was informed for the first time that there was another contract on the car. Mueller had not been previously informed that he was negotiating a "back-up" contract. Mueller was told not to worry because the individual with the earlier contract was having trouble obtaining financing, and probably would not be approved.

The next morning Mueller called the dealership to ask when he could pick up his car. After several attempts, he finally reached Richter and was told that the car had been sold to another customer. Mueller then spoke with Mike Reed, the sales manager, who told him that if McGill, Inc. could not deliver the car covered by the contract, they would find him another car. Reed signed and delivered to Mueller a document indicating that McGill, Inc. would find a replacement automobile and would allow Mueller the same $8,370 trade-in allowance that had been provided for in the original contract.

Several weeks later, Seth Brown, a McGill, Inc. employee, called Mueller and informed him that the dealership had not yet found a replacement. In February 1986, Mueller received a call from Greg Radford, the new sales manager for the dealership. Mueller was informed that the dealership would no longer honor the $8,370 trade-in allowance that had been previously negotiated. Radford indicated that they could sell Mueller a 1986 Porsche, but they would have to renegotiate the terms.

Mueller never received the car specified in the contract. The dealership apparently never found a 1985 vehicle like the car Mueller had contracted for. There is some testimony that it was difficult to find 1985 Porsche

Targas so late in the year. Mueller himself called several dealerships in the Gulf Coast area in an effort to locate a 1985 Porsche. However, he was never able to find a satisfactory 1985 replacement.

In April 1986, Mueller went to one of McGill, Inc.'s competitors, and sometime thereafter purchased a 1986 Porsche 911 Targa. He paid more for the 1986 model and received less for his trade-in allowance. There is testimony that the 1985 and 1986 models were virtually identical vehicles, but the cost of the 1986 was somewhat higher.

At the conclusion of Mueller's case, the trial court, on its own motion, directed a verdict for McGill, Inc. In his sole point of error, Mueller contends that the trial court erred by doing so.

■ An instructed verdict is proper only in limited circumstances: (1) when a defect in the opponent's pleadings makes them insufficient to support a judgment; (2) when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or (3) when the evidence is insufficient to raise an issue of fact. *McCarley v. Hopkins*, 687 S.W.2d 510, 512 (Tex. App.—Houston [1st Dist.] 1985, no writ). The appellate court determines de novo whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). The court considers all the evidence in the light most favorable to the party against whom the verdict was instructed. *Qantel Business Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 304 (Tex.1988).

In this case, the trial judge decided that Mueller had established a breach of contract as a matter of law, but concluded that Mueller had failed to prove that he suffered any damages. More specifically, the trial judge concluded that the correct measure of damages was the difference between the contract price and the market value at the time of the breach, and that because Mueller had failed to introduce any evidence as to the market price of the automobile, he was not entitled to recover. He further concluded that there was no evidence that the 1986 automobile was a reasonable replacement for the 1985 automobile, or that the cost of the next closest available replacement was a proper measure of damages.

■ Mueller claims on appeal that he is entitled to recover damages representing the difference between the contract price on the 1985 Porsche and the price he was required to spend on the 1986 Porsche. A buyer's remedies upon a breach of a contract of sale by the seller are set forth in chapter two of the Texas Business and Commerce Code.[1] Upon a seller's failure to deliver the goods, a buyer may either (1) "cover" by purchasing goods in substitution of those due from the seller, and recovering damages for the difference in the price of the contract and the "cover," or (2) recover the difference between the contract price and market price at the time he learned of the breach. TEX.BUS. & COM.CODE ANN. §§ 2.711, 2.712, 2.713 (Vernon 1968). If a buyer elects to "cover" he need not show the market price at the time of the breach. *Laredo Hides Co. v. H & H Meat Products Co.*, 513 S.W.2d 210, 221 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Therefore, the fact that Mueller failed to introduce evidence about the market price of the Porsche at the time he discovered the breach is not fatal to his case, if he can show that he properly "covered" under section 2.712.

The issue this Court must decide is whether there were any questions of fact relating to the issue of proper "cover" that should have been presented to a jury. If such questions of fact exist, the trial court erred by ordering a directed verdict.

A buyer may properly "cover" by "making in good faith and without unreasonable delay

1. Appellees argue that the "cover" provisions of the Texas Business and Commerce Code apply only to the sale of crops, and other types of fungible goods. However, we find no such limitation in the provisions of the code. The sales provisions of the Business and Commerce Code apply to transactions in goods. TEX.BUS. & COM. CODE ANN. § 2.102 (Vernon 1968). "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." TEX. BUS. & COM.CODE ANN. § 2.105(a) (Vernon 1968). The automobile involved in this case was movable at the time of identification to the contract.

any reasonable purchase of or contract to purchase goods in substitution of those due from the seller." TEX.BUS. & COM.CODE ANN. § 2.712. The issue of good faith in effecting "cover" is a question of fact to be resolved by the fact finder. *Kiser v. Lemco Indus., Inc.,* 536 S.W.2d 585, 590 (Tex.Civ.App.—Amarillo 1976, no writ).

In his findings of fact and conclusions of law, the trial judge found that the purchase of a 1986 Porsche was not a reasonably similar replacement for the 1985 contract described by the contract. Comment two to section 2.712 provides that the goods purchased as "cover" need not be identical to those provided in the contract, but must be commercially usable as reasonable substitutes. The evidence presented in the case showed that it was very difficult to obtain a 1985 Porsche so late during the year. The dealership tried to obtain a 1985 substitute, and Mueller himself attempted to locate a 1985. However, no acceptable 1985 was ever located. Whether a cover purchase is reasonable poses a "classic jury issue." *American Carpet Mills, Etc. v. Gunny Corp.,* 649 F.2d 1056 (5th Cir.1981).[2] In *Thorstenson v. Mobridge Iron Works Co.,* 87 S.D. 358, 208 N.W.2d 715, 716–17 (1973), the South Dakota Supreme Court reversed a directed verdict in favor of the seller and held that the issue of the reasonableness of the buyer's "cover" was a question of fact for the jury. We hold that the issue of whether the 1986 Porsche was a reasonable substitute for the 1985 Porsche should have been presented to the jury.

Because the evidence presented by Mueller at trial was sufficient to raise fact questions regarding good faith and the reasonableness of his attempt to "cover," we hold that the trial court erred by granting a directed verdict in favor of McGill, Inc.

Accordingly, we reverse the judgment and remand the cause for further proceedings.

---

**2.** Section 311.028 of the Texas Government Code (Vernon 1988) provides that when a uniform act is included in a code it shall be construed to make uniform the law of the states that enact it.

Therefore, we feel free to look to the law of other states when interpreting the Uniform Commercial Code, if Texas law is silent on the issue.