Affirmed and Opinion filed April 7, 2005









Affirmed and Opinion filed April 7, 2005.

 

In The

 

Fourteenth Court of Appeals

______________________

 

NO. 14-03-01319-CV

 

______________________

 

 

DR. VICTOR MANON and DR. ERMELINDA
MANON, 

Appellants/Cross-Appellees

 

V.

 

TEJAS TOYOTA, INC.,
Appellee/Cross-Appellant

 



 

On Appeal from the County
Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 766,333

 



 

O P I N I O N








Appellants/Cross-Appellees, the Manons,
argue in two points of error that the trial court erred by: (1) not awarding
the full amount of Acover@ damages for
breach of contract; and (2) refusing to award attorney fees.  Appellee/Cross-Appellant, Tejas Toyota, Inc.,
(ATejas@) argues: (1) Acover@ damages are not
the appropriate measure of damages in this simple breach-of-contract case; (2)
the evidence is legally and factually insufficient to support the submission of
and the jury=s answers to questions presented in the
jury charge; and (3) the trial court submitted an erroneous charge which led to
the award of improper damages.

Factual
and Procedural Background

The record
reflects that in September 2000, the Manons sought to purchase a new Toyota
Sienna mini-van from Tejas.  The Manons
clearly specified their desire to purchase a van with a certain color exterior,
wood-grained interior, and a trailer hitch. 
Unable to procure a 2000-model in the desired color, Tejas offered to
sell the Manons a comparable 2001-model Sienna at the same price as the 2000
version.  The Manons agreed and Tejas
subsequently delivered a 2001 Sienna. 
The van, however, did not have the wood-grained interior or trailer
hitch.  At Tejas= insistence, the
Manons accepted the van as delivered, but did so only on condition that Tejas
install the desired features.  Tejas
consented and assured the Manons that it had ordered the necessary parts and
would install them as soon as they were delivered to the dealership.

As promised, Tejas subsequently placed a
trailer hitch on the van.  However,
shortly after being mounted on the van, the hitch had to be removed because it
began causing an excessive rattling noise. 
Meanwhile, approximately in March of 2001, Tejas informed the Manons
that Toyota had discontinued making the wood-grained interior for the
2001-model Sienna van.  As such, Tejas
explained that it would be unable to install the wood-grained trim as
promised.  As a concession, Tejas offered
to refund the approximate value of the wood trim and trailer hitch and also
agreed to discount $1,000 off a new, substitute vehicle.  The Manons refused to accept these terms and,
instead, traded in the 2001 Sienna van to another dealership and purchased a
2001 Toyota Sequoia Sport Utility Vehicle.








After purchasing the SUV, the Manons sued
Tejas for breach of contract, fraud, negligent misrepresentation, and alleged
violations of the Texas Deceptive Trade Practices Act.  The Manons requested as damages either the
original purchase price of the Sienna van or the difference between the cost of
the SUV and the amount they received for the trade-in of the van.  They also sought to recover attorney
fees.  The trial court granted summary
judgment for the Manons on their breach-of-contract theory but ordered the
parties to proceed to trial on the remaining issuesCincluding damages
and attorney fees.  However, at trial,
the Manons failed to introduce proof of the reasonableness of their attorney
fees.  Accordingly, the trial court
entered an instructed verdict in Tejas= favor on that
issue.  Subsequently, the jury found
Tejas liable and awarded the Manons $8,422 plus interest for actual damages[1]
and $5,000 in exemplary damages. 

Breach-of-Contract
Damages

In the Manons= first point of
error, they argue the trial court erred by not awarding the full amount of
contract damages to which they are entitled. 
Specifically, the Manons contend they should have received Acover@ damages equal to
the difference between the cost of the Sequoia SUV they subsequently purchased
and the price of the Sienna van they originally purchased, i.e., $10,199.89.[2]  Furthermore, they claim they were entitled to
incidental and consequential damage of $7,300.00.[3]  Thus, the Manons= total request for breach-of-contract
damages equals $17,499.89.  In support of
this request, the Manons rely on Texas Business & Commerce Code sections
2.608, 2.711, and 2.712.








Under Texas Business & Commerce Code section 2.608, a
buyer who accepts a good is entitled to revoke acceptance if the buyer proves a
non-conformity exists that substantially impairs the value of the good.  Tex.
Bus. & Com. Code Ann. ' 2.608 (Vernon 1994).  If the buyer justifiably revokes, he is
entitled to Acover,@ i.e., purchase a reasonable
substitute good and seek damages for the difference between the cost of the
substitute good and the contract price of the original good.  Id. '' 2.711B.712. 
In addition, the buyer may recover any incidental or consequential
damages he suffered.  Id. '' 2.712, 2.715.

However, to be entitled to Acover@ damages the plaintiff must plead and
prove that the good was non-conforming in such a way that its value was
substantially impaired.  See id. ' 2.608; Freeman Oldsmobile Mazda
Co. v. Pinson, 580 S.W.2d 112, 114 (Tex. Civ. App.CEastland 1979, writ ref=d n.r.e.); Bill McDavid
Oldsmobile, Inc. v. Mulcahy, 533 S.W.2d 160, 164 (Tex. Civ. App.CHouston [1st Dist.] 1976, no
writ).  In addition, the plaintiff must
prove that he purchased the substitute good in Agood faith@ as a reasonable substitute.  See Tex.
Bus. & Com. Code Ann. ' 2.712; Mueller v. McGill,  870 S.W.2d 673, 675B76 (Tex. App.CHouston [1st Dist.] 1994, writ
denied); Kiser v. Lemco Indus., Inc., 536 S.W.2d 585, 589B90 (Tex. Civ. App.CAmarillo 1976, no writ).

The Manons claim they were entitled to revoke acceptance of
the Sienna because its non-conformities substantially impaired the value of the
van to them.[4]  They further contend that the Sequoia SUV was
a reasonable substitute for the Sienna van and point to deposition testimony
from one of Toyota=s own expert witnesses to support this contention.[5]  In light of this evidence, the Manons argue
they established the required elements under Business & Commere Code
sections 2.608, 2.711, and 2.712 and suggest they proved their right to receive Acover@ damages as a matter of law.








In response, Tejas argues in its first point of error and in
reply to the Manons= first point, that the Manons were not entitled to revoke
acceptance and that Acover@ damages are inappropriate. 
Tejas does not contest that it breached the sales contract or that it is
liable for this breach.  Instead, Tejas
contends the Manons failed to sustain their burden on two important fact
issues, namely, that: (1) the Sienna was substantially impaired due to the lack
of wood-grain trim; and (2) the Sequoia SUV was a reasonable substitute for the
Sienna van.  As such, Tejas argues that
sections 2.608, 2.711, and 2.712 of the Business & Commerce Code are
inapplicable.  Instead, Tejas contends that
section 2.714 provides the proper measure of contract damages.

Under section 2.714, a buyer who accepts a non-conforming
good and who has no right to revoke the acceptance is limited to recovering the
difference between the value of the good as received and the value had the good
been conforming.  Tex. Bus. & Com. Code Ann. ' 2.714.  Applying this section, Tejas argues the
Manons= recovery is limited to $591, the
estimated difference in value between the Sienna the Manons received and a
Sienna with the options they requested.[6]








To be entitled to Acover@ damages under section 2.608, the
Manons were required to plead and prove that the Sienna=s non-conformities substantially
impaired the van=s value.  See Tex. Bus. & Com. Code Ann. ' 2.608; Pinson, 580 S.W.2d at
114; Mulcahy, 533 S.W.2d at 164. 
The Manons were also required, under section 2.712, to prove that they
purchased the Sequoia SUV in Agood faith@ as a reasonable substitute for the Sienna van.  See Tex.
Bus. & Com. Code Ann. ' 2.712; Mueller, 870 S.W.2d at
675B76; Kiser, 536 S.W.2d at 589B90. 
Both of these issues are questions of fact which should have been
submitted to the jury.  See Vista
Chevrolet, Inc. v.  Lewis, 704
S.W.2d 363, 368  (Tex. App.CCorpus Christi 1985), aff=d in part, rev=d in part, 709 S.W.2d 176 (Tex. 1986) (AThe determination regarding whether
the defect or nonconformity substantially impaired the value of the good to the
buyer to justify revocation of acceptance is a fact issue for the trier of fact
to determine.@); Mueller, 870 S.W.2d at 676
(AWhether a cover purchase is
reasonable poses a >classic jury issue.=@) (quoting Am. Carpet Mills, Etc.
v. Gunny Corp., 649 F.2d 1056 (5th Cir. 1981)); Kiser, 536 S.W.2d at
585, 590 (A[W]hat constitutes good faith under
the circumstances of a particular case is a question of fact to be resolved by
the fact finder.@).

Because the Manons did not request a charge to submit these
fact issues for determination by the jury, they contend on appeal that these
issues were established in their favor as a matter of law.  But while the Manons presented some evidence
that the Sienna=s non-conformities substantially impaired its value, they
failed to establish this fact as a matter of law.  The Manons, for example, claimed the Sienna
was Augly@ without the wood-grained trim and
that they would not have purchased the van without the trim.  However, this alone is insufficient to
establish, as a matter of law, that the Sienna was substantially
impaired.  See Pinson, 580 S.W.2d
at 114.  The Manons also relied on
testimony from a Tejas employee who explained that a person would likely not
purchase a vehicle if that vehicle was missing certain desired features.  However, this is also not enough to prove,
as a matter of law, that the Sienna=s value was substantially
impaired.  See generally Kiser,
536 S.W.2d at 589 (explaining that without Alegal certainty@ that a party properly covered, a
court should not hold that the party proved its right to cover as a matter of
law).

Further, the jury determined that the lack of wood-grained
trim and trailer hitch constituted a difference in value of only $591.  This represents an Aimpairment@ of slightly more than one percent of
the van=s total value.[7]  Much like the court in Pinson, we do
not conclude the value of the Sienna was substantially impaired by a decrease
in value of such a slight amount.  See
580 S.W.2d at 114 (holding Aas a matter of law that a $75 to $100 defect in a $5,720.33
automobile [or just over 1% of the car=s total value] is not such a
nonconformity as to substantially impair the value of the car.@)








Likewise, while the Manons offered some evidence that the
Sequoia SUV was a reasonable substitute for the Sienna van, the proof hardly
establishes this fact as a matter of law.  
Having breached the contract, Tejas made several concessions in an
effort to reach an amicable compromise agreement.  The Manons could have accepted Tejas= offers by taking a refund of the
value of the wood trim and hitch and purchasing a new, substitute vehicle from
Tejas with the $1,000 discount.  The
Manons also could have returned the Sienna to Tejas and obtained a similar van
from another Toyota dealership; or they could have returned the van to Tejas
and attempted to purchase a similar van from a different car manufacturer.  While the Manons were under no obligation to
accept Tejas= concessions or to take any of the
specific actions listed above, they were required to act reasonably in
procuring a substitute vehicle.  See Tex. Bus. & Com. Code Ann. ' 2.712; see also Pinson, 580
S.W.2d at 114 (holding that a plaintiff failed to prove revocation after he
refused a car dealership=s offer to make repairs at no cost to him).  Instead, the Manons took the Sienna van they
purchased from Tejas to another dealership, accepted a lower trade-in price for
the van, and purchased an SUV which cost over $10,000 more than what they
originally paid for the van.[8]  We hold the Manons did not establish, as a
matter of law, that they, in good faith, obtained a reasonable substitute as
required by the Texas Business & Commerce Code.  See Tex.
Bus. & Com. Code Ann. ' 2.712; see Pinson, 580 S.W.2d
at 114.








            Because
the Manons did not request a jury charge question on either of these crucial
fact questions, and neither the jury nor the trial court ever made any explicit
findings on these issues, the Manons failed to prove they were entitled to
revoke acceptance.[9]  As such, they were precluded from recovering
damages for Acover,@ but instead, were entitled only to
standard breach-of-contract damages under section 2.714 of the Texas Business
& Commerce Code.  See Tex. Bus. & Com. Code Ann. ' 2.714; Aquamarine Assocs. v.
Burton Shipyard, Inc., 645 S.W.2d 477, 480 (Tex. App.CBeaumont 1982), aff=d, 659 S.W.2d 820 (Tex. 1983) (limiting recovery of
cover damages where party failed to submit issue of reasonableness to the
jury).

Having determined that the Manons failed to properly plead,
prove, and submit to the jury the issues of whether the Sienna=s value was substantially impaired
and whether the Sequoia SUV was a good-faith, reasonable substitute for the
van, we hold that Business & Commerce Code section 2.714 provides the
proper measure of contract damages in this case.  Having concluded that the Manons failed to
prove substantial impairment or good faith reasonable substitute as a matter of
law, we are guided by a deemed findingCconsistent with the trial court=s judgmentCthat the Manons did not prove
substantial impairment or reasonable substitute.  Accordingly, we overrule the Manons= first point of error, sustain Tejas= first point of error, and affirm the
trial court=s award of $591 for breach of
contract.

Attorney Fees








In their second point of error, the Manons
claim the trial court erred in refusing to award attorney fees.  Specifically, they contend the award of
attorney fees is mandatory when a party prevails under either the Texas
Deceptive Trade Practices Act (ADTPA@) or chapter 38 of
the Texas Civil Practice and Remedies Code. 
They argue that because they prevailed against Tejas, the trial court
was required to award attorney fees.

Prior to trial, the Manons moved for
summary judgment on all their claims including their request for attorney
fees.  Along with their summary judgment
motion, the Manons provided an affidavit from their attorney detailing the
requested fees and describing the fees as reasonable.  The trial court granted the Manons= summary judgment
motion on the issue of contract liability but denied the motion as to all
additional claims.  Therefore, the issue
of attorney fees proceeded to trial along with the Manons= other affirmative
claims for relief.

At trial, the Manons failed to make any
reference to the affidavit provided with their summary judgment motion and did
not have their attorney testify about the reasonableness of the requested
attorney fees.  Accordingly, Tejas moved
for an instructed verdict on the issue of attorney fees, claiming the Manons
failed to put forth the necessary evidence that the requested fees were
reasonable.  The trial court granted the
motion and denied the Manons= request for
attorney fees.

The Manons argue on appeal that because
they prevailed on their affirmative claims, the award of attorney fees was
mandatory.  They further claim that
because Tejas failed to provide any evidence which controverted their affidavit
on attorney fees, they established these fees as a matter of law.  Alternatively, the Manons argue that the
trial court should have taken judicial notice of the reasonableness of the
requested fees.  They point out that
under chapter 18 of the Texas Civil Practice and Remedies Code, uncontroverted
affidavits are sufficient evidence to support an award of attorney fees, and
under chapter 38, where there is no evidence of the reasonableness of the fees,
a court may take judicial notice of the fees. 
See Tex. Civ. Prac. &
Rem. Code Ann. '' 18.001, 38.001 (Vernon 1997).








Both the DTPA and the Texas Civil Practice
and Remedies Code allow a prevailing party to recover attorney fees.  See
Tex. Bus. & Com. Code Ann. ' 17.50(d) (Vernon
2002) (DTPA claims); Tex. Civ. Prac.
& Rem. Code Ann. ' 38.001 (general
attorney fees statute for various causes of action).  In fact, an award of attorney fees is
mandatory under these two statutory schemes. 
See, e.g., Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex.
1998) (noting that where statues say a party Amay@ recover attorney
fees, the court has no discretion in awarding those fees).  However, before a court can award
attorney fees, the party requesting the fees must prove they are reasonable and
necessary.  See Tex. Bus. & Com. Code Ann. ' 17.50(d); Tex. Civ. Prac. & Rem. Code Ann. ' 38.001; Arthur
Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818B19 (Tex. 1997); Lesikar
v. Rappeport, 33 S.W.3d 282, 307B08 (Tex. App.CTexarkana 2000,
pet. denied).

The reasonableness of attorney fees is
generally a question of fact for the jury=s
determination.  Bocquet, 972
S.W.2d at 21 (quoting Trevino v. Am. Nat=l Ins. Co., 168 S.W.2d 656,
660 (Tex. 1943)).  To guide the jury=s determination, a
party may introduce evidence in the form of sworn affidavits attesting to the
reasonableness of the fees.  See Tex. Civ. Prac. & Rem. Code Ann. ' 18.001.  When these affidavits are uncontroverted,
they are Asufficient to support a finding of fact by
judge or jury that the amount charged was reasonable or . . . necessary.@  Id.   Furthermore, a court is entitled to take
judicial notice of the reasonableness of attorney fees, without the need for
additional evidence, if a claim is brought under section 38.001 of the Texas
Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann.
'' 38.003B.004; Gill Sav.
Ass=n v. Chair King, Inc., 797 S.W.2d 31,
32 (Tex. 1990).








However, while a trial court is entitled
to take judicial notice of the reasonableness of attorney fees, the Texas
Supreme Court has specifically held that a court may do so only Ain [its] role of
trier of fact in the conventional trial of a non-jury case but not in
passing on a motion for summary judgment.@  Coward v. Gateway Nat=l Bank, 525 S.W.2d 857,
859 (Tex. 1975) (emphasis added); see also Garcia v. Martinez, 894
S.W.2d 806, 807 (Tex. App.CCorpus Christi
1994, no writ) (stating in dicta that a trial court cannot take judicial notice
of attorney fees without a hearing on the evidence); Gen. Elec. Supply
Co. v. Gulf Electroquip, S.W.2d 591, 601 (Tex. App.CHouston [1st Dist.]
1993, no writ).  Therefore, in a
non-jury trial, a trial court is entitled to enter findings of fact that
the requested attorney fees are reasonable; but when the case is tried before a
jury, the general rule applies, i.e., the reasonableness of the attorney
fees is a question of fact for the jury and must be supported by evidence
introduced at trial.  See generally Michol O=Connor & Byron P. Davis, O=Connor=s Texas Rules, Civil Trials 45 (2003) (AJudicial notice of
attorney fees can be taken only when (1) the claim is a Texas Civil
Practice and Remedies Code ' 38.001 claim, and
(2) the claim is tried on the merits.@) (emphasis
added).

Here, the only evidence the Manons
introduced regarding the reasonableness of attorney fees was included with
their motion for summary judgment.  Once
the court denied the motion for summary judgment and the case went to trial,
the Manons were required to put forth this same or other evidence at trial to
establish their right to recover attorney fees.[10]  See Garcia, 894 S.W.2d at 807 (AWhere there is
absolutely no testimony given at trial concerning an attorney=s fee, the
reasonableness of such a fee is a question of fact and must be supported by
competent evidence.@) (emphasis added).  Because the Manons failed to introduce any
evidence of attorney fees at trial, by affidavit or otherwise, they failed to
meet their burden on the issue of attorney fees.  As such, the trial court did not err in entering
an instructed verdict on the issue.[11]  We overrule the Manons= second point of
error.








Sufficiency
of the Evidence

As cross-appellant, Tejas argues in
its third point of error that the evidence is legally and factually
insufficient to support the jury=s award of damages for anything other
than a simple breach of contract. 
Specifically, Tejas contends that Question 3(b) of the jury charge is
unsupported by the evidence, and further alleges that there is no evidence of
an independent injury sufficient to award anything other than breach-of-contract
damages.

When both legal and factual sufficiency challenges are raised
on appeal, the court must first examine the legal sufficiency of the evidence.  See Glover v. Tex. Gen. Indem. Co., 619
S.W.2d 400, 401 (Tex. 1981).  In
reviewing a legal sufficiency challenge, an appellate court considers only the
evidence and inferences tending to support the trial court=s findings and disregards all
evidence and inferences to the contrary. 
See Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992); see
also Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002).  Thus, we must examine the record to determine
whether some evidence exists to support the finding in question, namely, that
the Manons suffered some pecuniary harm or injury as a result of Tejas= misrepresentations.  See id. 


In reviewing the factual sufficiency of the evidence, we must
consider and weigh all the evidence and should set aside the judgment only if
it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).  We may
not substitute our own judgment for that of the trier of fact, even if we would
have reached a different result on the evidence.  Maritime Overseas Corp. v. Ellis, 971
S.W.2d 402, 407 (Tex. 1998).













A closer examination of the jury charge provided in this case
indicates Question 3(b) was neither submitted nor answered in error.  Once the jury determined that Tejas engaged
in misrepresentations or deceptive trade practices under questions one and two,
it was tasked with appropriating damages in question three.[12]  Specifically, Question No. 3(b) asked the
jury to determine A[t]he pecuniary loss, if any, otherwise suffered by [the
Manons] and caused by [Tejas=] conduct.@[13] 
Tejas argues that the only pecuniary loss suffered by the Manons was the
loss of value stemming from the Sienna=s missing wood trim and trailer
hitch, i.e., $591.  As we already
have explained, this amount apparently constituted the damages for Tejas= breach of contract.  However, negligent misrepresentation and/or
DTPA violations are compensable actions separate and apart from breach of
contract.  See Formosa Plastics Corp.
v. Presidio Eng=rs & Contractors, Inc., 960 S.W.2d 41, 45B47 (Tex. 1998) (AA party=s actions may breach duties in tort
or in contract, or both simultaneously.@) (emphasis added); Chapa v. Tony
Gullo Motors I, No. 09-03-568-CV, 2004 WL 1902533, at *4B5 (Tex. App.CBeaumont Aug. 26, 2004, pet. filed)
(distinguishing cases allowing only breach-of-contract damages, and explaining A[t]his case [about an automobile
dealer=s failure to provide the vehicle that
the plaintiff requested] involves more than mere failure to perform contractual
obligations@). 
Furthermore, Tejas contends that even if the Manons are entitled to
recover additional damages, they failed to provide any evidence to support an
award of damages beyond the $591.

Both negligent misrepresentation and DTPA claims allow for
recovery of out-of-pocket damages.  See,
e.g., D.S.A., Inc. v. Hillsboro Ind. Sch. Dist., 973 S.W.2d 662, 663B64 (Tex. 1998); W.O. Bankston
Nissan, Inc. v. Walters, 754 S.W.2d 127, 128 (Tex.1988) (defining out-of-pocket
and benefit-of-the-bargain damages).  In
DTPA cases, a plaintiff may seek benefit-of-the-bargain damagesCinstead of out-of-pocket damagesCsimilar to those recoverable for breach
of contract.  See Walters, 754
S.W.2d at 128 (explaining that out‑of‑pocket and benefit‑of‑the‑bargain
are two measures of damages under the DTPA, and noting that a plaintiff may
recover the greater of the two measures).  Tejas relies on these principles to argue that
the Manons are limited to recovering damages under only one of these two
theories, thus precluding the Manons from recovering anything but $591.

However,  the Texas
Supreme Court has explained that recovery under the DTPA is not exclusively
limited to only these two types of damages. 
See Henry S. Miller Co. v. Bynum, 836 S.W.2d 160, 162 (Tex. 1992)
(holding that DTPA damages include recovery for Athe total loss sustained [by the
consumer] as a result of the deceptive trade practice.@); Ludt v. McCollum, 762
S.W.2d 575, 576 (Tex. 1988) (AAn aggrieved consumer may [receive] both cost of repair and
permanent reduction in market value notwithstanding such repairs, as cumulative
rather than mutually exclusive measures of damages [in DTPA cases].@); see also Tex. Bus. & Com. Code Ann. ' 17.45(11)
(providing for compensatory damages, including cost of repair and replacement
in DTPA actions); D.S.A.,
Inc., 973 S.W.2d at 663B64 (explaining that a plaintiff can recover, in addition to
out-of-pocket-expenses, any loss otherwise suffered as a consequence of
misrepresentations).  Therefore, DTPA
damages A>includ[e] related and reasonably
necessary expenses.=@ Bynum, 836 S.W.2d at 162 (quoting
Kish v. Van Note, 692 S.W.2d 463, 466 (Tex.1985)).  As such, a plaintiff is Apermitted [to recover] other damages
to ensure that the plaintiff is made whole.@ 
Id.








Here, the Manons provided evidenceCvia dealer receipts and other related
documentsCto support the full extent of damages
they requested.  The most significant
evidence was established through documents indicating the trade-in price they
received for the non-conforming Sienna. 
Despite paying Tejas $33,300 for the original purchase of the Sienna
van, the Manons received only $26,000 for the van when they traded it in to
another dealer.  This represents a
difference of $7,300.  In fact, this  seven-thousand dollar figure is consistent
with the amount the jury awarded for additional damages in Question No. 3(b).

Thus, the amount the jury awarded in Question 3(b) directly
correlates to the difference in value between what the Manons received and what
they eventually had to pay.  More
precisely, the jury awarded $7,831.00. 
This amount represents the $7,300 trade-in difference plus a $531 credit
that Tejas allegedly neglected to provide the Manons.[14]  Obviously, the jurors did not randomly envisage
these numbers and then arbitrarily craft a damage award to their own
liking.  Instead, they relied on the
receipts and other documentary evidence that the Manons introduced, and
ultimately determined that $7,831 was the additional out-of-pocket monetary
amount that the Manons would not have had to pay for the subsequent SUV
purchase but for the money they lost on the Sienna trade-in.  By awarding the $7,831 amount, the jury
apparently was attempting to provide recovery for Athe total loss sustained [by the
Manons] as a result of the deceptive trade practice [or misrepresentation].@ 
See Bynum, 836 S.W.2d at 162. 
Thus, it appears the jury attempted to Aensure [the Manons were] made whole.@ 
See id.  








Because the Manons provided sufficient evidence to support
their claim for damages, and Tejas did not produce any contrary evidence to suggest
the Manons= claims were improperly inflated or
otherwise unsubstantiated, the evidence sufficiently supports both the
submission of Question 3(b) and the jury=s answer to the question.  Certainly, there is at least some evidence
sufficient to withstand Tejas= legal sufficiency challenge. 
Moreover, after reviewing the entire record and noting the lack of
contrary proof, we find the jury=s award was not clearly wrong or
unjust.  Thus, there is also factually
sufficient evidence to support the award. 
Accordingly, we overrule Tejas= third point of error.

General Charge on Damages

Tejas contends, in its fourth point of error, that the trial
court erroneously submitted a general charge on damages, thereby permitting the
jury to award damages based on improper elements.  Ultimately, Tejas is challenging the jury
charge on the notion that it distinguished between multiple theories of
liability but improperly submitted only one count of damages to encompass those
theories.  In support of its complaint,
Tejas cites Harris County v. Smith, 96 S.W.3d 230 (Tex. 2002), and Crown
Life Insurance Company v. Casteel, 22 S.W.3d 378 (Tex. 2000), in which the
Texas Supreme Court explained that an appellate court should order a new trial
if the court cannot determine whether the jury=s damage award is based on an invalid
or unsupported theory of liability.  








In this case, AQuestion No. 1@ asked the jury to decide if
appellant committed acts of negligent misrepresentation.  AQuestion No. 2@ asked the jury if appellant engaged
in false, misleading, or deceptive trade practices.  AQuestion No. 3(b)@ then asked the jury to determine A[t]he pecuniary loss, if any,
otherwise . . . caused by [Tejas=] conduct.@ 
Therefore, it appears that the jury=s answer to Question 3(b) could have
been based on a finding of negligent misrepresentation, DTPA violations, or
both.  If the jury actually awarded
damages in the aggregate based on one improper theory, then a remand for new
trial would be appropriate under the cases cited by Tejas.  However, Tejas did not request a remand and
specifically explained to this court during oral argument that it did not
desire a new trial.  Therefore, Tejas has
not requested any relief on this point of error which we could properly grant.  See West End API, Ltd. v. Rothpletz, 732
S.W.2d 371, 374 (Tex. App.CDallas 1987, writ ref=d n.r.e.) (AWhat can be better established than
the proposition that relief that has not been prayed cannot be granted?  [Appellants] have given no indication
anywhere in their briefs that they desire a new trial . . . .  They only ask that we render judgment in
their favor. . . .  Nevertheless, we must
limit [appellants] to the relief prayed.@).

Moreover, while it would have been better for the trial court
to have submitted separate damage questions to coincide with each of the Manons= theories of liability, we do not
believe this oversight warrants a new trial. 
There was sufficient evidence presented at trial to support a jury
charge question on both the negligent misrepresentation and DTPA issues.[15]   Therefore, the jury=s award of damages was not based on
an invalid or unsupported theory of liability, but rather, a combination of
theories that appear to have been sufficiently supported.  Accordingly, we overrule Tejas= fourth point of error.

Exemplary
Damages

In its second, fifth, and sixth
points of error, Tejas argues the evidence was insufficient to support a jury
question on and an award of exemplary damages. 
Tejas contends, instead, that the jury awarded Apunitive@ damages which are not permitted in
simple breach-of-contract cases such as this one.








In its brief, Tejas summarily addressed this issue in three
sentences.  Specifically, Tejas argues
there was no jury finding of punitive damages nor of the elements required to
award punitive damages under the Texas Civil Practice and Remedies Code.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 41.001B.013 
(Vernon 1997 & Supp. 2004).  Tejas also claims the case involved only a
breach of contract, and therefore, only breach-of-contract damages, not
punitive damages, should have been awarded. 
In its AReply Brief,@ Tejas elaborates on this point of
error by distinguishing exemplary damages, under the Texas Civil
Practice and Remedies Code, from additional damages, under the
DTPA.  Compare Tex. Civ. Prac. & Rem. Code Ann. ' 41.001B.013 with Tex. Bus. & Com. Code Ann. ' 17.50 (Vernon 2002).  Therefore, the crux of Tejas= argument seems to be: the trial
court should not have awarded either exemplary or additional damages, but at
the very least, the trial court awarded the incorrect type of damages, i.e.,
Aexemplary@ as opposed to Aadditional.@

As a challenge to the sufficiency of the evidence, we will
review the record according to the standard set out above.[16]  Here, the record indicates the jury found
appellant liable for knowing, intentional, 
or unconscionable action[17]
and then set the amount of damages for this conduct at $5,000.[18]  The trial court then entered judgment
awarding the Manons A$5,000 for exemplary damages.@ 
By describing the damage award as exemplary, it appears
the court was attempting to apply the Texas Civil Practice and Remedies
Code.  See Tex. Civ. Prac. & Rem. Code Ann. ' 41.001B.013 (providing for the award of exemplary
damages).  However, the charge
itself mirrors the language for DTPA damages found in the Texas Pattern Jury
Charge.  See Comm. on Pattern Jury Charges, State Bar of
Tex., Texas Pattern Jury ChargesCBusiness,
Consumer & Employment PJC 110.11 (2000); but see id. 110.33B.34 (listing the charge elements
required for a finding of exemplary damages).  
Based solely on these factors, it is difficult to decipher what theory
of liability the jury used in awarding the $5,000.








The trial judge also appears to have been uncertain as to
which theory of liability was applicable. 
While considering this issue, the trial judge stated, AOh, DTPA, same as fraud.  I=m still contemplating whether or not
I can go under DTPA, although I=m leading more toward DTPA and less toward fraud.  Okay? 
But I haven=t totally made up my mind yet.  I=ll flip a coin.  Okay?  All right.@ 
Therefore, we agree with Tejas that the damage award is not a model of
specificity.

However, this does not mean the damage award is wholly
unsupported by the evidence.  In fact,
the Manons counter by arguing the damage amount was based on their DTPA claim
and that the Texas Civil Practice and Remedies Code was not applicable.  Furthermore, they contend the jury=s affirmative answer to AQuestion No. 4@Cwhether appellant committed a
knowing, intentional, or unconscionable actCsupports the court=s award of $5,000 regardless of which
theory is applied.

We agree that there is sufficient evidence to support an
award of either exemplary or additional damages.  Under the Texas Civil Practice and Remedies
Code, a plaintiff is entitled to recover exemplary damages if he proves, by
clear and convincing evidence, that the defendant acted fraudulently,
maliciously, or with gross negligence.  See,
e.g., Tex. Civ. Prac. & Rem.
Code Ann. ' 41.003; KPH Consolidation, Inc. v. Romero, 102 S.W.3d
135, 144 (Tex. App.CHouston [14th Dist.] 2003, pet. granted).  Similarly, the DTPA entitles a plaintiff
to recover additional damages, up to three times the amount of economic
damages, if the defendant acted knowingly. 
See, e.g., Tex. Bus. &
Com. Code Ann. ' 17.50(b)(1); see also Tex. Bus. & Com. Code Ann. ' 17.45(9) (describing a
knowing violation as one in which the defendant has Aactual awareness@ of the falsity, deception, or
unfairness of its actions); Gomez v. Diaz, 57 S.W.3d 573, 577 (Tex. App.CCorpus Christi 2001, no pet.).  Therefore, we will review the record to
determine whether the evidence supports a finding that Tejas acted either
fraudulently or with actual awareness of the falsity or deceptiveness of its
actions.








The record reflects that when the Manons first expressed
their desire to purchase a Sienna van from Tejas, they made it very clear that
a wood-grained interior was a crucial feature. 
Realizing that the Manons would likely not purchase a vehicle without
the wood trim, Tejas researched the availability of the trim on all Toyota
Sienna vans.  While Tejas representatives
and the Manons were negotiating the purchase of the Sienna, a Tejas salesman
determined that wood-grained interior trim was no longer available on any new
Toyota Sienna vans.  Despite this
revelation, Tejas informed the Manons that it had ordered the wood-grained trim
and that the trim would be delivered and installed within three weeks.  In reliance on Tejas= assurances, the Manons agreed to
purchase the Sienna van from Tejas.

When the Manons began experiencing problems with the
after-market trailer hitch installed by Tejas, they returned the Sienna for
service on the hitch.  Tejas again
promised the Manons that the wood trim was on order and that it would be
installed as soon as possible. 
Subsequently, the Manons made numerous additional visits to Tejas for
repairs on the trailer hitch, and each time, Tejas told the Manons that the
wood-grained trim was on order and would be installed as soon as it
arrived.  After several months had
expired and the Manons continued to demand installment of the trim, Tejas
finally informed the Manons that the wood-grained trim was no longer available
on Sienna vans.  Tejas further explained
that it would not be able to provide the feature despite repeatedly
promising  the same.  








These facts were all adduced at trial and provided for the
jury=s consideration.  But perhaps the most damaging evidence for
Tejas came in the form of dealership records and testimonies suggesting that,
in fact, Tejas never placed an order to purchase the wood-grained trim despite
making repeated assurances to the Manons that the trim was on order.  Tejas representatives testified on the stand
that they had not intended to misrepresent the Sienna=s available options or fraudulently
induce the Manons into purchasing the vehicle. 
However,  the jury was free to
disbelieve this testimony.  See
Transmission Exch. Inc. v. Long, 821 S.W.2d 265, 271 (Tex. App.CHouston [1st Dist.] 1991, writ
denied); Miller v. Kendall, 804 S.W.2d 933, 939 (Tex. App.CHouston [1st Dist.] 1990, no
writ).  The jury had an opportunity to
review both the dealership records and deposition and live testimony; and based
on this evidence, the jury concluded that Tejas had engaged in fraudulent
and/or false, deceptive trade practices. 
Accordingly, the jury awarded exemplary or additional damages for Tejas= conduct.  See generally Pace v. State, 650
S.W.2d 64, 65 (Tex. 1983)  (ADTPA [damages] are punitive [and] are
not to restore one to his position before the act giving rise to the damages,
rather they are to punish the wrongdoer and are an example to others.@); Global Equip. Sales, Inc. v.
Smith, No. 05-99-01046-CV, 2000 WL 566890, at * (Tex. App.CDallas Apr. 26, 2000, ) (affirming a
trial court=s award of additional damages for DTPA,
and holding that despite the plaintiff=s entwined breach of contract claim,
the award was not impermissibly punitive).

Nothing in our review of the evidence, or of the record as a
whole, suggests there was insufficient evidence to support either submission of
or the jury=s answers to the questions on Tejas= liability for misrepresentation/DTPA
violations.  See Padgett v. Bert Ogden
Motor=s, Inc., 869 S.W.2d 532, 535B37 (Tex. App.CCorpus Christi 1993, writ
denied).  Moreover, nothing in our review
suggests the jury=s award of $5,000 for additional/exemplary damages is
unsupported by the evidence.  As such, we
overrule Tejas= second, fifth, and sixth points of
error.

The judgment of the trial court is affirmed.

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Opinion filed April 7, 2005.

Panel consists of
Justices Anderson, Hudson, and Frost.











[1]  The $8,422 in
actual damages was apparently apportioned by the jury as follows: $591 for
breach of contract; $7,831 for misrepresentation/deceptive trade practices.





[2]  $43,499.89
[Sequoia SUV cost] B $33,300 [original Sienna van price] = $10,199.89.





[3]  $33,300
[original Sienna van price] B $26,000 [received for the Sienna as trade-in
allowance for the Sequoia SUV from another dealership] = $7,300.





[4]  The Manons
argue in their appellate brief that they would not have purchased the van
without the wood-grained trim.  They
contend the van was Augly@ without this trim and that this ugliness must be
considered when assessing the allegedly impaired value and the appropriate
measure of damages.  They further claim
that Abeauty@Cand therefore valueCis in
the eye of the beholder.





[5]  The witness
described the two vehicles as comparable, by industry standards, in terms of
towing-capacity, number of passengers they could carry, and price range.





[6]  This amount is
based on the jury=s answer to AQuestion
No. 3(a)@Cthe only uncontested jury charge questionCwhich asked the jury to determine the difference in
value between what the Manons received [the Sienna without the wood trim] and
what they requested [a Sienna with wood trim], i.e., standard
breach-of-contract damages.





[7]  A $591
decrease in value of a $33,300 vehicle represents an Aimpairment@ of 1.77%.





[8]  As Tejas
points out in its appellate briefs, the price of the Sequoia SUV was greater
than 125% of the purchase price of the Sienna van.  While there is no magic number which makes a
substitute good reasonable or not, we agree with Tejas that this 125%Cor greater than $10,000Cincrease
in price raises a serious question as to whether the SUV was a reasonable
substitute.  This question should have
been submitted to the jury, but because it was not we will deem a finding on
the issue consistent with the judgment.  See,
e.g., Tex. R. Civ. P. 279.





[9]  Citing Texas
Rule of Civil Procedure 279, the Manons argue that even if these issues were
required elements that should have been submitted to the jury, Tejas  waived this complaint by failing to object to
the missing elements.  Rule 279 provides
that a trial court may make a finding on an omitted element when a party fails
to object to the element=s omission from the jury charge.  See Tex.
R. Civ. P. 279; Gulf States Utils.Co. v. Low, 79 S.W.3d 561, 565
(Tex. 2002).  However, Rule 279 also
explains that when a trial court does not make an express finding on the
missing element, the appellate court is to deem a finding on the element in a
way that supports the court=s judgment if there is some evidence that supports the
finding.  See Tex. R. Civ. P. 279; State Farm Life
Ins. Co. v. Beaston, 907 S.W.2d 430, 437 (Tex. 1995).  

In this case, the trial court made no
express findings on the issues of substantial impairment or reasonable
substitute.  As such, we must deem a
finding on these issues consistent with the final judgment.  Because the jury awarded breach-of-contract
damages consistent with the amount permitted under Business & Commerce Code
section 2.714, we interpret this to mean the jury found against the Manons on
both issues, i.e., the Sienna=s value
was not substantially impaired and the $43,000 SUV was not a
reasonable substitute for the $33,000 van.





[10]  We also note
that the trial court was entitled to take judicial notice of attorney fees, if
at all, only on the Manons=
breach-of-contract claim, as it was the only claim governed by chapter 38 of
the Texas Civil Practice and Remedies Code. 
See, e.g., Tex. Civ. Prac. & Rem. Code
Ann. '' 38.001, .004; Gorman v. Gorman,
966 S.W.2d 858, 867 (Tex. App.CHouston [1st Dist.] 1998, pet. denied); Smith
v.Smith, 757 S.W.2d 422, 425 (Tex. App.CDallas
1988, writ denied) (refusing to take judicial notice in a DTPA case).





[11]  The Manons
also moved to re-open the evidence to allow them to fully develop their claim
for attorney fees.  They argue on appeal
that it was error for the trial court to deny this motion.  However, the record indicates the Manons
never obtained a ruling on their motion and, therefore, they have waived any
complaint on this issue.  See Tex. R. App. P. 33.1(a)(1)B(2); see also Walton Neon Co. v. Travel-Tex Corp.,
482 S.W.2d 934, 936B37 (Tex. App.CCorpus
Christi 1972, writ ref=d n.r.e.) (holding that no error was preserved when a
party asked the court to re-open the evidence but made no bill of exception).





[12]  At trial,
Tejas also challenged jury questions one and two by arguing the evidence was
insufficient to support either submission of the questions or the jury=s answers thereto. 
Questions one and two asked whether Tejas engaged in negligent
misrepresentation and deceptive trade practices, respectively.  The jury answered Ayes@ to both questions. 
Despite Tejas= objections at trial to the first two jury questions,
it did not maintain these challenges on appeal and, therefore, has waived any
issue regarding these two questions/answers. 
See, e.g., Tex. R.
App. P. 38.1.  Accordingly, we
begin with the premise that Tejas is liable for misrepresentation and/or
deceptive trade practices, and we need only 
to determine under this point of error whether the Manons properly
proved damages.





[13]  In its
entirety, Question 3 was presented to jury as follows:

What sum of money, if any, if paid in cash would
fairly and reasonably compensate [the
Manons] for their actual damages, if any, which were proximately caused by
Tejas Toyota, Inc.=s conduct.  [The
question then defined proximate cause and further instructed the jury] [d]o no
not include damages for one element in any other element.  Do not include in your answer to compensate
[the Manons] any amount that you find that [the Manons] could have avoided by
the exercise of reasonable care.  Do not
add any amount for interest on past damages, if any.  Consider the elements of damages listed below
and none other.  Consider each element
separately.

a)         The
difference, if any, between the value of what [the Manons] received in the
transaction and the purchase price or value given. [To which the jury awarded
$591.00.]

b)         The
pecuniary loss, if any, otherwise suffered by [the Manons] and caused by Tejas
Toyota Inc.=s conduct.  [To
which the jury awarded $7,831.00.]





[14]  The $531
figure came from a $500 trade-in discrepancyCthe
difference between the appraisal value of the Manons= first van [$3,500 for a Silhouette] and the amount
credited by Tejas for trade-in of the Silhouette [$3,000]Cplus 6.25% sales tax. 






[15]  See
generally discussion infra AExemplary Damages.@





[16]  See discussion
supra ASufficiency of the Evidence.@





[17]   This finding
was in response to jury charge AQuestion No. 4,@ which
asked if appellant had committed a knowing, intentional, or unconscionable act
to deceive the Manons.  The jury answered
in the affirmative.





[18]   This award
comes from the jury=s answer to AQuestion
No. 5@ of the charge, which read: 

What sum
of money, if any, in addition to actual damages, should be awarded to [the
Manons] against [Tejas] because [Tejas=]
conduct was committed knowingly or intentionally or was unconscionable?