**Affirmed and Opinion filed May 22, 2012.**



In The

# Fourteenth Court of Appeals
_____

NO. 14-10-00734-CV
_____

**HOUSTON POLY BAG I, LTD. , Appellant**

**V.**

**KEN KUJANEK, Appellee**

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2007-68468**

## OPINION

A plastic-bag manufacturing company sued a former sales representative for breach of fiduciary duty, breach of contract, and tortious interference with business relations. The sales representative filed a counterclaim asserting breach of contract. The jury found that the evidence did not prove a breach of contract or tortious interference by the sales representative. The jury found that the manufacturer breached its contract but that the breach was excused. As to the breach-of-fiduciary-duty claim, the jury answered the

breach and damages questions favorably to the manufacturer, but, under the jury's discovery-rule finding, this claim is barred by the statute of limitations. The trial court rendered judgment on the jury's verdict that the manufacturer and sales representative each take nothing. On appeal, the manufacturer challenges the legal and factual sufficiency of the evidence supporting the jury's discovery-rule finding. The manufacturer also asserts that the trial court erred in denying its request for a new trial based upon its argument that the evidence showed many breaches of fiduciary duty that occurred within the limitations period. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Houston Poly Bag I, Ltd. ("Poly Bag") is a plastic-bag manufacturing company. In 1990, Poly Bag hired appellee Ken Kujanek to work as an employee serving as a direct sales representative of Poly Bag. Kujanek worked in this position until he resigned his employment in 2007. Evidence at trial showed that, from the beginning of his employment in 1990, Kujanek engaged in transactions in which he would assist a company other than Poly Bag in locating another company other than Poly Bag that sold a product that the first company wanted to buy. In such a transaction, if a product was sold, then Kujanek would receive a commission as a result of the sale (an "Outside Transaction").

William E. Sumner, Jr. ("Bill Sumner"), founder and longtime president of Poly Bag, testified that, until 2007, he was not aware that Kujanek was engaging in any Outside Transactions. Bill Sumner gave testimony indicating that sales representatives in Kujanek's position were not supposed to engage in any Outside Transactions. Bill Sumner's son, William E. Sumner, III. ("Wes Sumner"), became part-owner of Poly Bag in 2005, and from that time forward served as manager of Poly Bag. Wes Sumner also gave testimony indicating that a sales representative in Kujanek's position was not permitted to engage in Outside Transactions.

Gene Wailes was the Poly Bag sales manager to whom Kujanek reported from the

2

start of Kujanek's employment until April 1996, when Wailes's employment at Poly Bag ended. Wailes testified about a conversation that he had with Kujanek when Kujanek began working for Poly Bag. Wailes testified that he told Kujanek that, if Poly Bag could not manufacture a product and one of Kujanek's clients wanted to buy that product, then Wailes "would have no problem if [Kujanek] sold a couple of items . . . through another manufacturer." Wailes stated that he did not want Kujanek to be making "cold calls on accounts that we could not manufacture the product at our expense." But, Wailes stated that "it would be a good idea if [Kujanek] could, through some means, sell a few of the items that we could not make to his customers that we had the business on." Wailes also testified that Wailes had "the idea that maybe it would benefit us if we let [Kujanek] on just a . . . very limited basis sell products through another manufacturer that we could not make."

Kujanek testified that when he began his employment with Poly Bag in 1990, Wailes told him he could engage in Outside Transactions if his existing customers sought a product that Poly Bag did not make. According to Kujanek, if one of his customers asked him for help regarding such a product, he was able to engage in Outside Transactions. Kujanek testified that this arrangement was in place from the time he started working at Poly Bag in 1990 forward and that he engaged in Outside Transactions during this entire period; but, Kujanek stated that the extent of these transactions in the 1990s was "pretty limited." The number of Outside Transactions in which Kujanek engaged increased each year during the period from 2000 through 2005, when Kujanek's compensation from these transactions exceeded $200,000.

Wailes left Poly Bag in April 1996. Shortly thereafter, he began working for one of Poly Bag's competitors. Bill Sumner testified that as a result of Wailes's actions, he had a non-competition agreement ("Agreement") drafted for Poly Bag's sales representatives. The Agreement had a proposed effective date of September 1, 1996. Bill Sumner testified that the company eventually decided not to implement the Agreement. Kujanek testified that he never signed a written employment agreement or

3

non-compete agreement during the course of his employment with Poly Bag.

From 1990 through April 1996, Kujanek and James Brent Oden both worked as sales representatives at Poly Bag. Trial testimony indicates that in April 1996, Oden replaced Wailes as Poly Bag's sales manager, and Oden became Kujanek's direct supervisor. Oden testified that when he worked as a sales representative at Poly Bag, he knew Kujanek engaged in Outside Transactions.

In September 2007, Oden was contacted by Donald Mower, a purchasing agent for one of Poly Bag's customers. Mower informed Oden that Kujanek, while employed as a sales representative for Poly Bag, was also working as a representative for Lone Star Plastics, a Poly Bag competitor. Poly Bag asserts that it did not actually learn of Kujanek's Outside Transactions or the conduct upon which it bases its breach-of-fiduciary-duty claim until September 2007.

Kujanek resigned his employment at Poly Bag in September 2007. Shortly thereafter, in November 2007, Poly Bag sued Kujanek asserting claims for breach of fiduciary duty, breach of contract, and tortious interference with business relations. Kujanek filed a counterclaim in which he asserted that Poly Bag breached its contract with him by not paying him certain commissions. In its live petition, Poly Bag alleged that Kujanek owed Poly Bag a fiduciary duty because of his full-time employment as a sales representative.[1] Poly Bag alleged that Kujanek breached his fiduciary duty by working for competitors while he was working as a full-time sales representative at Poly Bag.

The case proceeded to trial before a jury. The jury found as follows:

- The preponderance of the evidence does not show that Kujanek failed to comply with his employment agreement with Poly Bag.

- Poly Bag failed to comply with its agreement to pay Kujanek commissions.

- Poly Bag's failure to comply was excused.

---

[1] The trial court acted as if Kujanek owed Poly Bag a fiduciary duty, and Kujanek does not argue to the contrary on appeal. Therefore, we presume, without deciding, that Kujanek owed Poly Bag a fiduciary duty.

- Kujanek failed to comply with his fiduciary duties to Poly Bag.

- $110,560.00 in actual damages and $114,722.00 in lost profits, if paid now in cash, would fairly and reasonably compensate Poly Bag for its damages that were proximately caused by Kujanek's failure to comply.

- September 1, 1996, is the date by which Poly Bag, in the exercise of reasonable diligence, should have discovered "the outside brokerage transactions of Kujanek."

- The preponderance of the evidence does not show that Kujanek intentionally interfered with Poly Bag's business relationships.

The trial court rendered judgment on the jury's verdict, ordering that Poly Bag and Kujanek each take nothing. The trial court denied Poly Bag's "Motion For New Trial and Alternative Motion to Modify, Vacate or Reform the Judgment."

On appeal, Poly Bag challenges the legal and factual sufficiency of the evidence supporting the jury's finding in response to the discovery-rule question.

## II. STANDARDS OF REVIEW

When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* Jurors are the sole judges of witness credibility and the weight to give to testimony. *See id.* at 819.

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, we set aside the fact finding only if it is so

5

contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616.

### III. ISSUES AND ANALYSIS

**A. Is the evidence legally sufficient to support the jury's finding in response to the discovery-rule question?**

In its first issue, Poly Bag asserts that the evidence is legally insufficient to support the jury's finding in response to Question 3C, the discovery-rule question. The trial court did not give the jury any definitions or instructions regarding this question, which read in its entirety as follows: "By what date should [Poly Bag], in the exercise of reasonable diligence, have discovered the outside brokerage transactions of Kujanek?" The jury answered "September 1, 1996." At the charge conference, no party objected to the form of this discovery-rule question.[2] Therefore, this court measures the sufficiency of the evidence using the charge given, even if the charge does not correctly state the law.[3] *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (holding that appellate court could not

---

[2] Poly Bag objected to this question on the ground that it had no obligation to discover Kujanek's breach of fiduciary duty. Poly Bag did not object to the form or the wording of this question.

[3] On appeal, Poly Bag cites legal principles regarding the discovery rule from several cases. *See Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997); *S.V. v. R.V.*, 933 S.W.2d 1, 6–8 (Tex. 1996); *Slay v. Burnett Trust*, 187 S.W.2d 377, 394 (Tex. 1945); *El Paso Elec. Co. v. Raynolds, Holding Co.*, 100 S.W.2d 97, 101–02 (Tex. 1937); *Villareal v. Wells Fargo Brokerage Servs.*, 315 S.W.3d 109, 119 (Tex. App.—Houston [1st Dist.] 2010, no pet.). But, the legal rules cited from these cases were not submitted to the jury and are not the standard by which we measure the sufficiency of the jury's finding. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

6

review the sufficiency of the evidence based on a particular legal standard because that standard was not submitted to the jury and no party objected to the charge on this ground or requested that the jury be charged using this standard); *Hirschfeld Steel Co. v. Kellogg Brown & Root, Inc.*, 201 S.W.3d 272, 283–86 (Tex. App.—Houston [14th Dist.] 2006, no. pet.) (reviewing sufficiency of evidence based on unobjected-to jury instruction and rejecting various arguments based on different legal standards).

At the threshold, several aspects of this jury finding should be noted. First, the jury did not find a specific date on which Poly Bag, in the exercise of reasonable diligence, should have discovered Kujanek's outside brokerage transactions. Rather, the jury found the date by which this discovery should have been made. In other words, the jury found that Poly Bag should have made this discovery on or before September 1, 1996. In addition, the jury was not asked to find the date by which Poly Bag, in the exercise of reasonable diligence, should have discovered the conduct that the jury found to have been a breach of Kujanek's fiduciary duty. Instead, the jury was asked to find the date by which Poly Bag, in the exercise of reasonable diligence, should have discovered Kujanek's "outside brokerage transactions," a term not defined in the charge. The jury was instructed, "When words are used in this charge in a sense which varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning." Therefore, we measure sufficiency of the evidence against the commonly-understood meaning of "outside brokerage transactions." *See The Kroger Co. v. Brown,* 267 S.W.3d 320, 322–23 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (measuring sufficiency of evidence against commonly understood meaning of term that was not defined in charge). In the context of this case, we conclude that the commonly-understood meaning of this term is two or more transactions in which Kujanek received a commission for his services in helping a buyer who was not Poly Bag purchase

7

a product from a seller who was not Poly Bag.[4]  In other words, the commonly-understood meaning is two or more Outside Transactions.

Kujanek's testimony would allow reasonable and fair-minded people to find that Kujanek engaged in two or more Outside Transactions on or before September 1, 1996. As to the date by which Poly Bag, in the exercise of reasonable diligence, should have discovered that Kujanek engaged in two or more Outside Transactions, Oden testified that he has been employed at Poly Bag since 1984 and that he was promoted to sales manager when Wailes retired, which the evidence showed was in April 1996.[5]  Oden also testified as follows:

Q.  Do you recall testifying that you, in fact, knew that Ken Kujanek sold products with Dick Thompson?

A.  Yes, ma'm.

Q.  And . . . during your deposition, you couldn't recall whether it was as a salesperson or a sales manager, correct?

A.  Yes, ma'm.

Q.  But you're aware that was an outside brokerage deal, correct?

A.  Yes.  When all that — yes, ma'm.

Q.  All right.  Thank you.  And so is it your testimony today that you somehow make a distinction that you knew Ken Kujanek was doing it when you were a salesperson but not as a sales manager?

A.  That all started out, m'am, when I was a sales rep [sic] for Houston Poly Bag.  I was not a sales manager.

Q.  Okay.

A.  When that program started.

---

[4]  At trial, Bill Sumner testified that he did not think there was anything wrong with saying that "when you broker a product you just put a buyer and a seller together."

[5]  Wailes testified that he retired in April 1996.  Kujanek also testified that Oden replaced Wailes.

Q.     All right. And so when you became a sales manager, did you just ignore that idea that had been going on?

A.     Yes.

Q.     Okay.   So you — you knew Ken Kujanek was doing it as a salesperson; you knew he was doing it as a sales rep; you just — you ignored it?   I mean as a sales rep and then as a sales manager?

A.     Yes.

Q.     Okay.   So you knew that Mr. Kujanek brokered outside deals, correct?

A.     Yes.

Q.     And you knew that as early as the early 1990s when you were a sales rep for Houston Poly Bag, correct?

A.     Yes.

Q.     So it wasn't a revelation to you in 2007 that he had brokered outside deals, correct?

A.     I thought the deal with Dick Thompson had broken off long before, m'am.

Q.     Well you never talked to Mr. Kujanek about it, did you?

A.     No.

Q.     And you were the person he reported to, correct?

A.     Yes.

Q.     And you knew that that had gone on before, at least with Dick Thompson you were aware of [sic], but you didn't do anything to figure out if it was still going on, whether you should shut it down or whether you even cared about it, correct?   . . . Is that correct, sir?

9

A.    Dick Thompson had told me, and I'm not sure when, that him and Kenny no longer did business.   When I was told by Dick Thompson that, I thought all Kenny's stuff was over with pretty much.

The trial testimony showed that from the time Kujanek started working at Poly Bag until Wailes retired in April 1996, Kujanek reported to Wailes, who was the only sales manager at Poly Bag, and that Wailes reported to Bill Sumner.   From Wailes's retirement through September 1, 1996, Kujanek reported to Oden, who was the only sales manager at Poly Bag, and Oden reported to Bill Sumner.   Bill Sumner testified that he hired these sales managers to manage the sales and the sales representatives.   Wes Sumner testified that, as sales manager, Oden handles the sales representatives and "the contracts and bids."

Considering the evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support it, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not, the trial evidence would enable reasonable and fair-minded people to find that, in the exercise of reasonable diligence, Poly Bag should have discovered Kujanek's outside brokerage transactions by September 1, 1996.   *See City of Keller,* 168 S.W.3d at 823, 827 (Tex. 2005).

Poly Bag asserts that the evidence showed that the number of Outside Transactions in which Kujanek engaged in the 1990s was insignificant and that the number of these transactions did not become significant until 2001.   But, as discussed above, we measure the sufficiency of the evidence by the court's charge, which asked only by what date, in the exercise of reasonable diligence, Poly Bag should have discovered the "outside brokerage transactions" of Kujanek.   Under the charge, the jury was not asked by what date, in the exercise of reasonable diligence, Poly Bag should have discovered that Kujanek had engaged in a significant number of "outside brokerage transactions."   Therefore, even if the number of these transactions was not significant until 2001, that would not be relevant to the sufficiency of the evidence supporting the jury's finding.   *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

10

Poly Bag argues that the jury found Kujanek breached his fiduciary duty by engaging in over $19 million of Outside Transactions, and Poly Bag suggests that the jury charge asked the jury when Poly Bag reasonably should have discovered this conduct. But, the jury simply found that Kujanek had breached his fiduciary duty. In the breach question, the trial court did not state that a certain level of "outside brokerage transactions" were necessary before the jury could find a breach of fiduciary duty. Indeed, in the breach question, the trial court does not refer to "outside brokerage transactions" at all. Therefore, the jury did not find that Kujanek breached his fiduciary duty by engaging in over $19 million of Outside Transactions. Relying upon the relevant portions of Bill Sumner's testimony, the jury may have found that any Outside Transaction that Kujanek engaged in at all constituted a breach of fiduciary duty. In addition, as discussed above, the jury was not asked by what date, in the exercise of reasonable diligence, Poly Bag should have discovered Kujanek's breach of fiduciary duty or the conduct the jury found to constitute such a breach.[6] *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

Poly Bag suggests that the jury's finding was based on the date from the draft of the non-compete agreement submitted to Kujanek. As part of our analysis, we need not and do not rely upon the draft of this agreement, Kujanek's refusal to sign it, or Wailes's retirement from Poly Bag and employment at one of Poly Bag's competitors shortly thereafter.

Poly Bag also asserts that the knowledge of Poly Bag's sales managers, Wailes and Oden, should not be imputed to Poly Bag because the sales managers were not agents of Poly Bag. But, the trial court did not instruct the jury that a corporation can act and

---

[6] Poly Bag also asserts that the record contains no evidence that the owners of Poly Bag or its president had any knowledge of any Outside Transactions by Kujanek before 2007. Under the court's charge, the jury found the date by which, in the exercise of reasonable diligence, Poly Bag—not Poly Bag's owners or president—should have discovered Kujanek's "outside brokerage transactions." *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86.

acquire knowledge only through its agents, nor did the trial court instruct the jury that any legal standard had to be satisfied before Poly Bag could be bound by the knowledge of its sales managers. The jury was asked about the entity Poly Bag. In the absence of any instruction, the issue is whether under the applicable legal standard, the trial evidence would enable reasonable and fair-minded people to find that the knowledge of sales managers Wailes and Oden should be imputed to Poly Bag. *See City of Keller,* 168 S.W.3d at 823, 827. Bill Sumner testified that he hired Wailes and Oden as sales managers to manage the sales and the sales representatives. Wes Sumner testified that, as sales manager, Oden handles the sales representatives and "the contracts and bids." Evidence showed that between 1990 and September 1, 1996, Kujanek reported to the sales manager, and the sales manager reported to Bill Sumner. Under the applicable legal standard, the trial evidence would enable reasonable and fair-minded people to find that the knowledge of sales managers Wailes and Oden should be imputed to Poly Bag, including the knowledge Oden had as a sales manager and had acquired when he was a sales representative.[7] *See id.*

For the reasons stated above, we conclude that the evidence is legally sufficient to support the jury's finding that, in the exercise of reasonable diligence, Poly Bag should have discovered the outside brokerage transactions of Kujanek by September 1, 1996. Accordingly, we overrule Poly Bag's first issue.

**B.** **Is the evidence factually sufficient to support the jury's finding in response to the discovery-rule question?**

In its second issue, Poly Bag asserts that the evidence is factually insufficient to support the jury's finding in response to the discovery-rule question. This court measures the sufficiency of the evidence using the charge given, even if the charge does not correctly state the law. *See Osterberg*, 12 S.W.3d at 55; *Hirschfeld Steel Co.*, 201 S.W.3d at 283–86. We examine the entire record, considering both the evidence in favor of, and

---

[7] Even if the issue were the legal sufficiency of the evidence to support a finding that the sales managers were Poly Bag's agents, we would conclude the evidence is legally sufficient.

contrary to, this finding. *See Maritime Overseas Corp.*, 971 S.W.2d at 406–07. The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Pascouet*, 61 S.W.3d at 615–16. We may not substitute our own judgment for that of the jury, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616. The jury found that, in the exercise of reasonable diligence, Poly Bag should have discovered the outside brokerage transactions of Kujanek by September 1, 1996. After considering and weighing all the evidence under the applicable standard of review, we conclude that this finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* Accordingly, we overrule Poly Bag's second issue.

### C. Did the trial court err in denying the manufacturer's request for a new trial based upon evidence that the sales representative engaged in many Outside Transactions within the four-year period before the manufacturer filed suit?

In its third issue, Poly Bag asserts that the trial court erred in denying its motion for new trial because (1) Poly Bag's breach-of-fiduciary-duty claim arises from many breaches of fiduciary duty, most of which occurred within four years before Poly Bag filed suit; (2) even if Poly Bag should have discovered Kujanek's earlier breaches of fiduciary duty near the time they were committed, Poly Bag should not be barred from recovering for breaches that occurred later on, within four years before Poly Bag filed suit.[8] In the court's charge, the jury was not asked to find whether Kujanek breached his fiduciary duty more than once, and Poly Bag did not complain of the failure of the charge to contain such a question. Nor did Poly Bag request the trial court to submit a question in this regard. The jury was not asked to find the damages, if any, caused by Kujanek's breaches of fiduciary duty, if any, within the four years before Poly Bag filed suit. Poly Bag did not

---

[8] For the purposes of our analysis, we presume that Poly Bag preserved error regarding this argument in the trial court.

13

complain of the failure of the charge to contain such a question or request the trial court to submit a question in this regard.

The jury found that Kujanek breached his fiduciary duty, and this finding could have been based upon conduct by Kujanek before September 1, 1996, or before November 2003 (four years before Poly Bag filed suit). The record contains evidence of many Outside Transactions by Kujanek in the four years before suit was filed in November 2007. The record also contains evidence of many Outside Transactions before November 2003, and Poly Bag's expert based his damage calculations on data regarding Kujanek's Outside Transactions from 1999 through 2007. Poly Bag asked the jury to award damages in the amounts of $1,147,000 and $475,000. In response to the breach-of-fiduciary-duty damages questions, the jury found damages of $110,560 and $114,722. The jury found an aggregate amount of damages that was less than fourteen percent of the aggregate amount requested by Poly Bag. There is no way of knowing the basis for these damages awards, and it is possible that the jury based its damages awards on Outside Transactions that occurred during certain years and not others.[9] The jury may have based it damages findings only on Outside Transactions before November 2003, or only on Outside Transactions after November 2003, or on Outside Transactions before and after this date. As submitted to the jury, the statute of limitations barred Poly Bag's breach-of-fiduciary-duty claim unless, in the exercise of reasonable diligence, Poly Bag should have discovered Kujanek's outside brokerage transactions within four years before Poly Bag filed suit.

Poly Bag could have requested a charge that asked the jury to find the damages, if any, proximately caused by the breaches of fiduciary duty, if any, that the jury found to have occurred within four years prior to the filing of suit. Poly Bag did not do so. In this context, the trial court did not abuse its discretion by denying Poly Bag's motion for new

---

[9] In the damages question, the trial court did not submit a measure of damages to the jury or instruct the jury to consider Outside Transactions during a particular period; and, this submission drew no objection from Poly Bag.

14

trial. *See Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 631–32 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Underwriters at Lloyds v. Edmond, Deaton & Stephens Ins. Agency,* No. 14–07–00352–CV, 2008 WL 5441225, at *8 (Tex. App.—Houston [14th Dist.] Dec. 30, 2008, no pet.) (mem. op.).

Poly Bag also asserts that the evidence shows multiple breaches of fiduciary duty by Kujanek, most of which occurred after November 2003. Poly Bag asserts that its breach-of-fiduciary-duty claim should be considered a continuing tort. Poly Bag does not cite and research has not revealed any case holding that a claim for breach of fiduciary duty is a continuing tort.[10] A continuing tort is an ongoing wrong causing a continuing injury, and the limitations period for a continuing tort does not begin to run until the tortious conduct ceases. *See Markwardt v. Texas Indus., Inc.*, 325 S.W.3d 876, 893 (Tex. App.—Houston [14th Dist.] 2010, no pet.). If Poly Bag's breach-of-fiduciary-duty claim were a continuing tort, then even though Kujanek's conduct in breaching his fiduciary duty began more than four years before suit was filed, Poly Bag's claim for the entire course of conduct would not be barred by limitations, and Poly Bag could maintain a claim for the entire "continuing injury" caused by this conduct. *See Dickson Construction, Inc. v. Fidelity and Deposit Co. of Maryland*, 960 S.W.2d 845, 851 (Tex. App.—Texarkana 1997, no pet.).

In response to Poly Bag's claims, Kujanek asserted a statute-of-limitations defense. Poly Bag pleaded the discovery rule and fraudulent concealment but did not plead the continuing-tort doctrine. The discovery-rule question in the jury charge was inconsistent with the breach-of-fiduciary-duty claim being a continuing tort, but Poly Bag did not voice any complaint regarding the continuing-tort doctrine during the charge conference. Nor did Poly Bag raise the continuing-tort doctrine during trial. On this record, we conclude

---

[10] Indeed, the continuing tort doctrine has not yet been addressed or endorsed by the Supreme Court of Texas as to any claim. *See Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 816, n.8 (Tex. 2005).

that Poly Bag waived its complaint based upon the continuing-tort doctrine.[11]  *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("A defendant who has established that the suit is barred cannot be expected to anticipate the plaintiff's defenses to that bar. A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will, therefore, be deemed waived."); *Butler v. Lowe's Home Centers, Inc.*, No. 14-10-00297-CV, 2011 WL 1709898, at \*2 (Tex. App.—Houston [14th Dist.] May 3, 2011, pet. denied) (mem. op.) (holding plaintiff waived argument that continuing tort-doctrine applied by not pleading it or raising it during summary-judgment proceedings).

For the reasons stated above, we overrule Poly Bag's third issue.

## IV. CONCLUSION

The evidence is legally and factually sufficient to support the jury's finding that, in the exercise of reasonable diligence, Poly Bag should have discovered Kujanek's outside brokerage transactions by September 1, 1996.  Poly Bag waived its complaint based upon the continuing-tort doctrine.   Presuming that Poly Bag preserved error regarding the remainder of its arguments under the third issue, the trial court did not abuse its discretion by denying Poly Bag's request for a new trial based upon these arguments.

The trial court's judgment is affirmed.


/s/  Kem Thompson Frost
    Justice


Panel consists of Justices Frost, Seymore, and Jamison.

---

[11] Even absent waiver, given Poly Bag's failure to raise the continuing-tort doctrine at trial, the trial court would not have abused its discretion in denying a request for a new trial based upon this doctrine.

16