**Dissenting; and Opinion Filed August 18, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-08-01584-CV

### TXU PORTFOLIO MANAGEMENT COMPANY, L.P. N/K/A LUMINANT ENERGY COMPANY, L.L.C., Appellant

### V.

### FPL ENERGY, LLC; FPL ENERGY PECOS WIND I, L.P., FPL ENERGY PECOS WIND II, L. P., AND INDIAN MESA WIND FARM, L.P., Appellees

### On Appeal from the 116th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 04-10314

## DISSENTING OPINION ON REMAND

Before Justices Francis, Evans[1], and Whitehill[2]
Dissenting Opinion by Justice Evans

I regret that I must respectfully dissent. I disagree with the majority's standard of appellate review used to evaluate the fourth issue regarding cover raised by TXU Portfolio Management Company, L.P. n/k/a Luminant Energy Company, L.L.C. (TXUPM), so I arrive at a different result using what I understand is the correct standard. Using the charge as submitted to measure whether there was any evidence to submit the question and support the jury's answer to it, I conclude the evidence was legally sufficient to support submission of the question and the

---

[1] The Honorable David Evans succeeded the Honorable Joseph B. Morris, a member of the original panel and author of the original opinion in this case, upon Justice Morris's retirement.

[2] The Honorable Justice Bill Whitehill succeeded the Honorable Kerry P. FitzGerald, a member of the original panel, upon Justice FitzGerald's retirement.

jury's answer that TXUPM covered by "purchasing or producing electricity as a substitute for the electricity promised but not delivered under the Agreements." For the reasons stated below, I would affirm the take-nothing judgment of the district court on TXUPM's breach of contract claims against FPL Energy, LLC, FPL Energy Pecos Wind I, L.P., FPL Energy Pecos Wind II, L.P., and Indian Mesa Wind Farm, L.P. (Wind Farms). I then reach the subsequent issue regarding TXUPM's draw down of $3.075 million from the Wind Farms' letters of credit and conclude the trial court did not err in granting declaratory relief that TXUPM must return the money.

## I.
### STANDARD OF REVIEW

I "begin by determining the appropriate standard of review, then move in turn to each challenge." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 584 (Tex. 2013).

TXUPM stated its fourth issue as the following:

ISSUE PRESENTED: Did the trial court err in: 1) submitting to the jury the question of whether TXUPM's undisputed continuous "balancing" of energy supplies to energy demands constituted cover as a matter of law; 2) refusing to disregard the jury's incorrect answer to that legal question; and 3) voiding the jury's award of actual damages to TXUPM on the ground that TXUPM failed to submit evidence of "cover" damages when, in fact, TXUPM did not cover as a matter of law?

The Wind Farms proposed, the trial court submitted, and the jury answered the following cover question:

QUESTION FIVE

Did TXU "cover" for the electricity that the Wind Farms failed to provide under the Agreements?

"Cover" means purchasing or producing electricity as a substitute for the electricity promised but not delivered under the Agreements.

Answer Yes or No:

Yes __X__ No _____

–2–

TXUPM objected that no evidence supported the submission of Question 5 or the definition and objected that the question incorrectly separated electricity from the RECs and should have referenced annual quantities of renewable energy promised but not delivered under the agreements. But TXUPM did not bring forward any complaint in its initial brief on appeal to the form of the question or instruction.

A no-evidence or legal insufficiency issue is preserved in the trial court by any one of the following methods: "(1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue or (5) a motion for new trial." *Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex. 1991) (citing *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985)); *see First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 338 (Tex. App.—Dallas 2011, pet. denied); *accord* TEX. R. CIV. P. 301. So when TXUPM objected at the charge conference that no evidence supported the submission of Question 5 regarding cover, it preserved its legal insufficiency issue to the submission of and the jury's answer to the cover question.[3] *See Cecil*, 804 S.W.2d at 510–11.

The starting point generally of a legal or factual sufficiency review is the charge and instructions to the jury. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003). This is necessary in order to "first have a clear understanding of the evidence that is pertinent to [the appellate court's] inquiry." *Id*. When there is no objection to the form of a charge brought forward as an issue on appeal, we should assume the charge is correct without deciding that issue and evaluate the sufficiency of the evidence against the charge. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112

---

[3] TXUPM also preserved its legal insufficiency issue in its motion for judgment notwithstanding the jury's verdict to Question 5.

(Tex. 2009) ("Because there was no objection to the charge as submitted, we assume, without deciding, that the instruction was correct and measure the evidence by the charge as given.") (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000)); *Boehringer v. Konkel*, 404 S.W.3d 18, 27 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (where party made objections to question during charge conference but did not bring those challenges forward in appeal yet complained on appeal regarding factual and legal sufficiency of the jury's answer to the question, court would not imply a challenge to the wording of the question, so it measured the sufficiency of the evidence by the question in the charge), *disapproved on other grounds by Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014). Even where a party argues the submission of a question is not supported by evidence or is precluded as a matter of law by certain evidence but that party does not object to the form of the question submitted, we measure the legal sufficiency of the evidence by the form of the question asked. *See Shows v. Man Engines & Components, Inc.*, 364 S.W.3d 348, 357 (Tex. App.—Houston [14th Dist.] 2012), *aff'd*, 434 S.W.3d 132 (Tex. 2014); *Houston Poly Bag I, Ltd. v. Kujanek*, 370 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applied *Osterberg* evaluating legal sufficiency of evidence against charge as given because appellant had not objected to form of question while acknowledging appellant had objected at charge conference it had no legal duty); *Lone Starr Multi-Theatres, Ltd. v. Max Interests, Ltd.*, 365 S.W.3d 688, 694–95 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (appellant objected to one question on sufficiency grounds but not to form of question so court used charge to analyze sufficiency of evidence citing *Osterberg*). "Even if another legal theory was argued to the jury and explained by the lawyers in argument, we are bound by the instructions given to the jury and presume that the jury followed those instructions." *Seger v. Yorkshire Ins. Co., Ltd.*, No. 13-0673, 2016 WL 3382223, at *12 (Tex. June 17, 2016) (no objection to direct employee instruction; lawyers argued alter ego theory not in charge). We

–4–

measure the legal sufficiency by the form of question and instructions submitted to the jury even where an appellant objected that the question as a whole was not in broad form and was a comment on the weight of the evidence and objection to a different instruction in the question, but did not object to the instruction at issue in the appeal. *See Eagle Oil & Gas Co. v. TRO-X, L.P.*, 416 S.W.3d 137, 148–49 (Tex. App.—Eastland 2013, pet. denied).

TXUPM does not present any argument why we should not use the charge and instead use what it views as the correct law to evaluate the sufficiency of the evidence. In fact, TXUPM does not argue for any standard for our review of its complaint that the trial court submitted the cover question to the jury and the jury answered it "yes" thereby causing reversible error. It appears from its briefing that TXUPM *assumes* a de novo standard of review. For that reason alone, we should default to use the charge submitted to the jury for the legal standard until a party adequately briefs with authorities why we should use a different standard. *See EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 869 (Tex. App.—Dallas 2008, no pet.) (evaluating sufficiency of the evidence based on law stated in charge reasoning, "Although EMC's sufficiency argument is based on this [legally correct] standard, EMC offers no explanation as to why we should measure sufficiency based upon the correct legal standard rather than by the charge that the jury was actually given.").

In its original brief on appeal, TXUPM did not challenge the form of Question 5 or the definition of cover, but argued its view of the correct law directly from sections 2.712 and 2.713 of the Uniform Commercial Code and opinions interpreting those provisions. In its brief on remand TXUPM argued the definition of cover in the charge "failed to instruct the jury of the crucial requirement that cover occur 'after' breach." Generally, a new issue may not be raised for the first time after the opening brief. *See, e.g.*, TEX. R. APP. P. 33.1(i) (appellant's brief must include "a clear and concise argument for the contentions made, with appropriate citations to

authorities and to the record"); 38.3 (reply brief to address "any matter in the appellee's brief"); *Stull v. LaPlant*, 411 S.W.3d 129, 136 n.3 (Tex. App.—Dallas 2013, no pet.). For the reasons stated above, the Wind Farms urged us not to consider TXUPM's complaint about the definition of cover being incorrect made for the first time in its brief on remand. I conclude the Wind Farms are correct because TXUPM does not complain on appeal about error in the form of the definition of "cover" in Question 5 or argue for a standard of review different from the charge as submitted.[4] *See Boehringer*, 404 S.W.3d at 27 (legal sufficiency evaluated by charge as submitted where objection to form of question not brought forward on appeal); *EMC Mortg. Corp.*, 252 S.W.3d at 869 (where appellant did not argue for standard of review different than charge as submitted, charge was standard for legal sufficiency review); *see also Eagle Oil & Gas Co.*, 416 S.W.3d at 148–49.

I, therefore, would follow the supreme court's and our precedent by beginning our analysis of legal or factual sufficiency with the charge as submitted unless a party has presented argument why we should use a different standard. *See Golden Eagle Archery*, 116 S.W.3d at 762; *EMC Mortg.*, 252 S.W.3d at 869. For these reasons, I conclude the correct analysis in this case is to evaluate the legal sufficiency of the evidence for the submission of, and to support the jury's answer to, Question 5 using the question and instruction that were submitted in the charge. I begin my analysis there using the traditional standards for evaluating the legal sufficiency of the evidence.[5]

---

[4] As noted above, TXUPM objected at the charge conference that the form of Question 5 incorrectly separated electricity from the RECs and should have referenced annual quantities of renewable energy promised but not delivered under the Agreements. This does not comport with TXUPM's legal insufficiency argument on appeal which, as TXUPM noted in its brief on remand, relates to the definition of cover not including "after breach." I do not base my dissent on this incongruity. *But see Eagle Oil & Gas*, 416 S.W.3d at 148–49 (charge as submitted used to evaluate legal insufficiency issue on appeal where objections to form of question in trial court were unrelated to legal insufficiency argument on appeal).

[5] We conduct a legal sufficiency review by considering all the evidence before the jury, crediting evidence in support of the verdict if reasonable jurors could, and disregarding evidence contrary to the verdict unless reasonable

## II.
### ANALYSIS OF COVER

*"'Cover' means purchasing or producing electricity as a substitute
for the electricity promised but not delivered under the Agreements."*

TXUPM first argues section 4.04 of each contract with the Wind Farms requires an annual reconciliation of annual minimum quantities of electricity and RECs and, therefore, the Wind Farms could not and did not breach the agreements until each annual reconciliation occurred. The Wind Farms argue one of the problems with TXUPM's argument is it assumes the annual reconciliation included an annual minimum electricity requirement in conflict with the supreme court's opinion. The supreme court carefully analyzed TXUPM's view that the annual reconciliation involved both electricity and RECs and rejected that position. *FPL Energy, LLC*, 426 S.W.3d at 67–69. Section 4.04 refers only to RECs, does not include electricity, Net Energy (a defined term including both electricity and RECs), or any other reference to electricity. For example, section 4.04(a) announces, "At the end of each calendar year, . . . the amount of RECs produced in that year is compared to the Annual Quantity." Sections 4.04(b) and (c) deal with

---

jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823, 827 (Tex. 2005). We consider all the evidence in the light most favorable to the judgment indulging every reasonable inference in favor of the judgment. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 520 (Tex. 2003). "On an issue where the opposing party bears the burden of proof, we sustain a legal-sufficiency challenge to an adverse finding if our review of the evidence demonstrates a complete absence of a vital fact, or if the evidence offered is no more than a scintilla." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014) (citing *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014)). Anything more than a scintilla of evidence is legally sufficient to support the jury's finding. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). When there is no objection to the form of a charge submission, we measure the legal and factual sufficiency of the evidence against the jury charge as given. *See Wolff*, 94 S.W.3d at 530 (citing *Osterberg*, 12 S.W.3d at 55 ("it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge")).

In conducting our review of the legal sufficiency of the evidence, we are mindful that the jury, as fact finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819; *Hinkle v. Hinkle*, 223 S.W.3d 773, 782 (Tex. App.—Dallas 2007, no pet.). "[Jurors] may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary." *City of Keller*, 168 S.W.3d at 819 (footnotes omitted).

the amount of RECs exceeding or being less than the Annual Quantity. Sections 4.04(d), (e), and (f) make provision for how the parties would deal with the Wind Farms' deficient delivery of RECs. In making its determination, the supreme court rejected TXUPM's position that in the contracts "the parties simply use RECs as a counting mechanism for both" RECs and electricity. *Id*. The supreme court determined that section 4.04 "deals only with RECs, and not electricity." *Id*. at 67. Because the annual reconciliation provisions of the contracts do not involve electricity deficiencies, I agree with the Wind Farms that the annual reconciliation contractual provisions do not provide support for TXUPM's argument that there is legally insufficient evidence to support the jury's verdict that TXUPM covered the electricity deficiencies of the Wind Farms. This case was tried and submitted to the jury by a charge that separated electricity from RECs and limited the issue of cover to electricity deficiencies in the definition of cover: "'Cover' means purchasing or producing *electricity* as a substitute for the electricity promised but not delivered under the agreements." (Emphasis added). The supreme court's analysis of the contracts indicates that the trial court was correct to approach electricity separately from RECs.

TXUPM's other argument is it could not cover the Wind Farms' breach of annual minimum electricity requirements in the contracts because it would have had to cover during each year before breach of the Agreements occurred. In support, TXUPM argues the Wind Farms could not breach during any given year an annual minimum electricity requirement until the close of that year, so TXUPM's real-time balancing of electricity could not occur after the Wind Farms' breach—as required by section 2.712(a)—and still occur within the year. First, TXUPM does not cite any cases from any jurisdiction making this conclusion based on an annual quantity requirement in a contract. Second, TXUPM did not bring forward on appeal any issue that the trial court erred by omitting "after breach" or should have referenced annual quantities of renewable energy promised but not delivered under the agreements in the definition of cover.

Thus, we are bound by the definition of cover in the charge: "'Cover' means purchasing or producing electricity as a substitute for the electricity promised but not delivered under the Agreements."[6]

The Agreements to which the cover definition directed the jury were three contracts that were the same in most respects relevant to the issues on appeal. They required in section 4.01, each wind farm "shall sell and deliver, and [TXUPM] shall purchase and accept, all of the RECs and Net Energy produced by" two of the wind farms and 38% of the RECs and Net Energy produced by the third wind farm. (Net Energy was, essentially, the amount of electricity the Wind Farms delivered to the electric grid). The contracts stated in section 2.01 the "anticipated net average annual generation" was 250,000 megawatt-hours ("MWh") for two of the Wind Farms and 300,000 MWh for the third wind farm. TXUPM was not only obligated to accept delivery of 100% or 38%, respectively, of the Net Energy, but according to section 4.02 of each contract TXUPM was to pay the Full Price for the first 105% of the "Annual Quantity" and 50% of the Full Price for amounts in excess of that. The "Annual Quantity" was defined as 250,000 MWh for two of the Wind Farms and 105,000 to 115,000 MWh for the third wind farm. There was no dispute at trial that the Wind Farms never delivered the Annual Quantity to TXUPM, so the price never dropped by 50%.

Section 3.01(b) of the contracts required the Wind Farms to deliver a daily plan for the next day by 9:00 a.m., including day ahead generation projections, and inform TXUPM of other circumstances that might affect the Wind Farms' ability to generate electricity, such as notifications if five percent or more of the generating units were unavailable. Section 3.02 of the contracts required the Wind Farms to attend quarterly meetings with TXUPM to discuss, among

---

[6] For this reason, I do not decide this issue under sections 2.712(a) and 2.713(a) of the Uniform Commercial Code.

other things, the production of the Wind Farms and "the outlook for the current compliance period production of RECs." Manu Asthana, TXUPM's vice president, testified that when TXUPM received the generation forecasts from the Wind Farms, it would put that into their day ahead resource plan to ERCOT. Any deviation from the levels forecasted and amended down by ERCOT, "which happens, you know, frequently, because the wind changes all the time, we will actually spend money to have resources on line to absorb that instantaneous realtime variation." Asthana further stated, "as the wind fluctuated, we would actually step in with our own resources sometimes to make up the slack, if you will, at no charge to FPL."

In addition, because electricity cannot be stored, any electricity delivered by the Wind Farms had to be immediately transmitted to TXUPM's ultimate destinations—its customers. Likewise, any failure of the Wind Farms to deliver the electricity promised during the year necessarily had to be replaced during that year so TXUPM could meet its own electricity obligations. When the atmospheric conditions or other circumstances, such as ERCOT curtailments, prevented the Wind Farms from meeting their daily forecasts, TXUPM's real-time balancing resulted in TXUPM's replacing the electricity that the Wind Farms failed to deliver. When the Wind Farms were unable to deliver their projected generation, the evidence is undisputed that TXUPM always generated or acquired sufficient electricity to meet its needs and would make up for any shortfall by obtaining substitute power from its own sources. Based on the evidence, I conclude there was legally sufficient evidence to support the submission of the cover question and the jury's answer effectively that TXUPM's real-time balancing was TXUPM's way of "purchasing or producing electricity as a substitute for the electricity promised but not delivered under the Agreements," as cover was defined in the jury charge.

Cover is often a factual issue a jury must decide.[7] Based on this record, there is legally sufficient evidence to support the trial court's submission of Question 5 regarding cover and the jury's finding that TXUPM covered by "purchasing or producing electricity as a substitute for the electricity promised but not delivered under the Agreements."

The proper measure of damages with respect to the undelivered electricity was the difference between TXUPM's cost to generate or purchase the substitute electricity and the contract price. *See* TEX. BUS. & COM. CODE ANN. § 2.712(b). The only damage models TXUPM offered at trial, however, were based on a market value of the combined undelivered energy and RECs after it calculated the cost of the Wind Farms' breach after the end of the contract year. As to RECs, TXUPM did not put on any evidence that it had been penalized by the PUC for the RECs the Wind Farms failed to deliver or the market price of the undelivered RECs (TXUPM instead relied on the liquidated damages clause). Because TXUPM pleaded and proved an incorrect measure of damages and submitted no evidence as to the proper measure of damages for the undelivered RECs, the trial court was correct in rendering a take-nothing judgment on TXUPM's breach of contract claim.[8] I, therefore, would resolve TXUPM's fourth issue against TXUPM. Resolution of the cover issue makes it unnecessary to address the issue regarding the adequacy of TXUPM's evidence of combined electricity and RECs market price damages.[9]

---

[7] *See Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 748 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (cover including good faith in purchasing substitute is a question of fact for the jury); *Mueller v. McGill*, 870 S.W.2d 673, 676 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (same); *Kiser v. Lemco Indus., Inc.*, 536 S.W.2d 585, 590 (Tex. Civ. App.—Amarillo 1976, no writ) (cover is factual question for fact finder); *see also Amer. Carpet Mills, Etc. v. Gunny Corp.*, 649 F.2d 1056, 1060 (5th Cir. 1981) (same under Georgia law); *Thorstenson v. Mobridge Iron Works Co.*, 208 N.W.2d 715, 717 (S.D. 1973) (same under South Dakota law).

[8] Notably, TXUPM does not argue that the trial court's take-nothing judgment was improper if the cover issue was properly submitted to the jury.

[9] These arguments were in response to the third issue in the Wind Farms' cross-appeal original briefing arguing that the jury award was based on improper evidence of market-value damages.

## III.
### DECLARATORY JUDGMENT

TXUPM contends that the trial court erred in declaring TXUPM was required to return the $3.075 million it had accessed from the letters of credit securing the Wind Farms' contractual obligations.[10] TXUPM's principal appellate argument to support this issue is derivative of TXUPM's argument for reversal of the take-nothing judgment based on market price versus cost of cover. Because I resolved TXUPM's damages argument against it, that no longer supports reversal of the declaratory judgment. Although there are a few additional statements in its briefs, TXUPM did not address why the trial court erred in ordering return of the $3.075 million if the trial court's judgment was affirmed regarding TXUPM's fourth issue.[11] *See* TEX. R. APP. P. 38.1(i). In my view, therefore, no further argument is presented to address on the merits regarding the declaratory judgment. Accordingly, I would deny TXUPM's declaratory judgment argument.

## IV.
### CONCLUSION

Based on what I view as the correct standard of review, I conclude the issue of whether TXUPM covered by "purchasing or producing electricity as a substitute for the electricity promised but not delivered under the Agreements" was properly submitted to the jury and the jury's affirmative answer was supported by legally sufficient evidence in light of the charge as submitted. I further conclude that in light of the jury's finding and in the absence of any evidence as to TXUPM's cost to cover the electricity deficiencies or evidence of cost to cover or

---

[10] This is TXUPM's third issue in its supplemental brief and its fifth issue in its original briefing. Under issue three in its supplemental brief, TXUPM also argues its entitlement to attorney's fees as the prevailing party pursuant to section 38.001(8) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2015). Because resolution of the cover issue results in the affirmance of the take-nothing judgment on TXUPM's breach of contract claims, in my opinion it is unnecessary to address attorney's fees.

[11] TXUPM argues the Wind Farms had no live cause of action to support such a declaration. In its one paragraph argument in its original appellate brief on this issue and two paragraph supplemental briefing for this issue, TXUPM did not cite the record or any legal authority.

market price of the RECs or penalty imposed by the PUC, the trial court did not err in rendering judgment that TXUPM take nothing on its breach of contract claims against the Wind Farms.

I would affirm that portion of the trial court's judgment addressing TXUPM's damages. Specifically, I would affirm the judgment that TXUPM take nothing on its breach of contract claims against the Winds Farms and the declaration in the judgment that TXUPM is obligated to return the full amount of the security it accessed from the Wind Farms' letters of credit. Because the majority uses a different standard of review resulting in different conclusions, I dissent.

081584RD.P05

/David Evans/
DAVID EVANS
JUSTICE